Belknap,  }
April 1, 1902. }

## HUGHES *v.* BOSTON & MAINE RAILROAD.

A railroad company is under no obligation to keep its right of way clear of obstructions which may render the place dangerous to an infant trespasser.

The fact that an infant trespasser upon railroad premises was injured while exploding a signal torpedo which he found beside the track at a distance of one fourth of a mile from either station or crossing, and the inferences which might fairly be drawn from the rules of the company requiring trainmen to be supplied with such torpedoes and regulating their use, do not warrant a submission to the jury of the question whether injuries so received were wantonly or intentionally inflicted.

An invitation to go upon premises is not to be inferred from the fact that persons habitually enter without objection from the owner.

CASE, for negligence. Transferred from the November term, 1901, of the superior court. At the close of the plaintiff's opening statement to the jury a nonsuit was ordered by *Peaslee*, J., upon motion of the defendants, subject to the plaintiff's exception.

The opening statement, so far as material, was substantially as follows: The plaintiff, at the time between nine and ten years of age, on June 25, 1900, while walking along the railroad track from the Lakeport station to Messer-street crossing, at a point one fourth of a mile from either station or crossing, found lying beside the track a railroad torpedo. He picked it up, put it upon the rail, struck it with a rock, and was injured from the resulting explosion. For many years the railroad has permitted people, including children, to pass up and down over these tracks. The portion of the railroad between Messer-street crossing and Lakeport station is a common thoroughfare. A signal torpedo such as the plaintiff found is a very dangerous explosive. The defendants knew the use that was being made of their track by people, including children, who were constantly passing.

Upon being inquired of as to what the evidence would be to prove the defendants' fault, counsel stated it would be that already recited; that this was a torpedo of a kind had and used only by the railroad; and that from this he would argue that it was left where found, or in some improper place, by the defendants' servants. He also offered to prove certain rules of the defendant railroad, which required all trainmen to be supplied with torpedoes, and directed their use as signals by placing and leaving them upon the rail in certain contingencies. Rule 15 (a) is as follows: "Torpedoes must not be placed near stations or road crossings where persons are liable to be injured by them."

*Shannon & Young* and *E. A. & C. B. Hibbard*, for the plaintiff. The rules laid down as to infant trespassers in several recent cases are not laid down as arbitrary rules, but as rules of common sense, and common sense determines the limits of their application. So to guard one's property that trespassing children cannot injure themselves is thought to be practically impossible, and therefore not one's duty. But the same cases recognize that there may be a liability for traps, enticements, and wanton injuries. *Clark* v. *Manchester*, 62 N. H. 557, 581; *Frost* v. *Railroad*, 64 N. H. 220, 221, 222; *Buch* v. *Company*, 69 N. H. 257, 262; *Shea* v. *Railroad*, 69 N. H. 361, 363.

The term " trap " is not limited to traps intentionally set for the express purpose of injuring people, but applies to things in general that are so arranged as to have a hidden danger into which a careful man in broad daylight, in the full possession of his senses, would be likely to fall. We do not say that for every trap, in this sense of the word, there is a liability, if injury results from it; but only that there may be, and that the case cannot be disposed of without further consideration. The term " wanton " is not limited to willful acts, but includes gross negligence, considering the character of the danger to which people are exposed, both as to their likelihood of falling into it and the probable injury if they do fall into it. For example, an uncovered well is not in general a trap, and leaving it so is not in general wanton. But a well covered first with laths and then with turf, so that the place was not distinguishable from its surroundings, might be a trap and the injury wanton, though the owner's only object was to remove an eyesore in the cheapest way, and he was so stupid as never to think of the danger. If an electric company has an uncovered wire carrying a current of high tension, that runs along the ground or within three or four feet of the ground, in a place where people have a chance to go freely and in fact do commonly go, though without right, that is a trap, and the placing or leaving it there a wanton act, though no injury was intended or thought of.

This torpedo was lying in plain sight in a well-traveled path. It was a curious looking object which some one was certain to pick up for closer examination. If the first man who picked it up did not explode it or know what it was, he would probably drop it back, or drop it in some other place, ready for another. The same with a second and a third person, and so on. Unless some one should find it who understood that it was dangerous and was sufficiently regardful of the interest of his kind to take the trouble of either exploding it or depositing it in some place where no one could find it again, it was almost certain to do an injury sooner or later. A small boy with a small stone could explode it and would

be likely to do so. A man would be less likely, but more from his having less curiosity than because he would anticipate danger. Surely it is a duty to mankind in general, trespassers not excepted, not to set such an engine of destruction on its course.

The court need not fear that by so holding it will be logically forced to hold that it is a man's duty to cut down or enclose his fruit trees, or to fasten his ladders with carefully secured staples and locks. See 64 N. H. 222. The fruit tree and the ladder may have certain inherent dangers; but they are practically unavoidable, and they are open dangers, even though some small boys may not know them. Most machines and tools have certain open dangers. Many of them have other dangers, which are not open in the sense that every one ought to anticipate precisely what is likely to happen, but are open in the sense that people generally would expect danger of some kind in meddling with them. As to sealed tin cans, people are familiar with them in various shapes and sizes; but the man of average prudence would not regard it as dangerous to pound one with a stone. No doubt he would regard it as dangerous to eat the contents of such a can which he found abandoned, and very likely the child who had never heard of lead or ptomaine poisoning would be chargeable with a knowledge of their dangers. But the child is not chargeable with the knowledge that pounding the can with a stone is dangerous unless the man of ordinary prudence so regards it. It is not imposing on the possessor of a can of explosive material an intolerable or an unreasonable burden to hold it his duty not to throw it away or abandon it wherever he may chance to be, even on his own land where others have no right to come, if it is sure that some one will come sooner or later, and almost sure that the final result will be serious injury to some person; still less if the place is in reality " a thoroughfare," to the landowner's knowledge.

Probably the line between liability and non-liability is not precisely the line between hidden and open dangers. A hidden danger might be so slight or so difficult to avoid that it would be unreasonable to require precautions against it; and an open danger might be so great and so unnecessary, might show so gross and wanton a disregard for human life, that the injury resulting from it should be treated as willful. The true test is that of reasonableness, and it cannot be made more definite except by specifying particular cases or classes of cases, leaving all doubtful cases for the jury to determine.

Taking the facts of this case, is it unreasonable to hold that the defendants owe a duty to the public generally and the plaintiff in particular not to leave a torpedo, which is a " highly dangerous explosive," in a well-defined foot-way beside their tracks, which is

in fact, though not legally, "a common thoroughfare" within a city, unless they have some purpose in so leaving it which counterbalances the danger to the public?

In *Carter* v. *Railroad*, 19 S. C. 20, the torpedo was left on the rail as a signal. There was absolutely no evidence that it was an unreasonably dangerous method of signaling, and "no evidence that the torpedo was so explosive and so dangerous as reasonably to require of the defendant a notice to the public that it was being used." It was held that a nonsuit should have been granted, on the ground that there was no evidence of the defendants' negligence. Stress is laid on the fact that the torpedo was placed there for a proper purpose.

In *Harriman* v. *Railway*, 45 Ohio St. 11, the torpedo which caused the injury was one of several which were placed on the track by the railroad employees in mere wantonness, intending to have them exploded by their own train when it moved on. The court said that generally no duty is imposed by law on the owner to keep his premises in a suitable condition for trespassers or licensees who enter by permission only, that this applies to a railroad's right of way between stations and public crossings, and proceeded: "It is apparent that there may be a substantial difference between absolving the owner from the active duty of providing against the danger of accident to a trespasser upon his premises, or one who enters the same as a mere licensee, and giving him the same immunity when he knowingly places a highly explosive and dangerous instrument or agent in the way that he knows the licensee, a child of tender years, is habitually accustomed to go, and where an ordinarily prudent person would reasonably expect him to go, and be thereby injured." The only license was from knowledge of the common practice.

Suppose a man, discovering that rats are eating his apples, prepares a number of apples with a deadly poison. After distributing what he chooses of them, he carelessly throws one out of the window. It falls on his own land, out of sight from the street, and not in a place frequented by trespassers. A boy happens to cross his land at that point, picks up the apple, eats it, and dies. Was there no breach of duty? Is a chemist who is experimenting in explosives or in poisons, or a bacteriologist who is raising deadly cultures, guilty of no breach of duty in disposing of his products in so careless a way that the probable result is death to some trespasser, provided only they are not so disposed of as to be likely to be dangerous to any one not a trespasser? Is there no line between holding that he must keep all his dangerous products locked up or labelled for the benefit of burglars, and holding him under *some* duty to exercise reasonable care for the benefit of a nominal trespasser?

It may be said that the carelessness in the cases supposed is so gross as to amount to wantonness, if not actual willfulness; but so it is in the case at bar. We have, in our illustrations, excluded all intention of doing mischief, and left only indifference to its possibility, or an entire thoughtlessness on the subject. We say that one who handles deadly explosives or poisons is bound to think of the danger of leaving them where they may do mischief, even to trespassers. If he leaves them in an unsafe place, without any reason whatever,— if he abandons them wherever he chances to be,— he is not absolved merely by its being on his own land where others have no right to go, especially if he knows that others frequently do go there.

It is a generally accepted rule that a landowner is not liable to a trespasser for injury caused by the dangerous condition of his land, whether the danger existed when the landowner acquired the land, or was produced later by natural forces or by acts of others. When the dangerous condition was produced by acts of the landowner himself, the general rule is the same; and the court in this state has refused to make an exception when the trespasser was a child, and the dangerous object was attractive to children. The ground on which *Frost* v. *Railroad*, 64 N. H. 220, was decided has been called by an eminent writer " cold and draconic." 1 Thomp. Neg. (2d ed.), s. 1040. Most courts have taken the same view of that decision, and rejected it. Whichever be right on that question, we assume that the New Hampshire decisions will not be overruled. The point which we desire to make is that with which we began this brief: that the decisions were not intended to be cold or draconic, or in any way arbitrary, but merely to state the rule of reasonableness — of common sense — as the court understood it. There is probably no court in the land less disposed than this to make a fetich of any arbitrary rule of law, and it is safe to say that it never does so wittingly. It has not done so on the point in question, however strong may be the language of the cases.

What we understand to have been actually decided in this state is that a city is not obliged to fence a disused reservoir while filling it up (*Clark* v. *Manchester*, 62 N. H. 577), or a manfacturing corporation to stop its machinery or forcibly to eject a trespassing child (*Buch* v. *Company*, 69 N. H. 257), or a railroad to lock its turntables or discover chance trespassers. *Frost* v. *Railroad*, 64 N. H. 220 ; *Shea* v. *Railroad*, 69 N. H. 361. Throwing away poisons or explosives is an altogether different case. Public opinion would condemn it, and rightfully. It is a breach of duty to the public and to the individual injured.

*Jewett & Plummer* (with whom was *Frank S. Streeter*), for the defendants.

PARSONS, J. If the unexploded torpedo lying beside the track rendered the defendants' premises unsafe for the use which the plaintiff, a boy nine years old, was attempting to make of them, that fact does not establish that the defendants were guilty of negligence. Actionable negligence is the breach of a duty owed by the defendant to the plaintiff. Where there is no duty there is no negligence. *McGill* v. *Granite Co.*, 70 N. H. 125, 127. "The ownership of land imposes no duty upon the owner for the benefit of trespassers." *Davis* v. *Railroad*, 70 N. H. 519, 520. Hence, in the words of the plaintiff's brief, a landowner "is not obliged to fence a disused reservoir while filling it up (*Clark* v. *Manchester*, 62 N. H. 577), or a manufacturing corporation to stop its machinery or forcibly to eject a trespassing child (*Buch* v. *Company*, 68 N. H. 257), or a railroad to lock its turntables or discover chance trespassers (*Frost* v. *Railroad*, 64 N. H. 220; *Shea* v. *Railroad*, 69 N. H. 361)," or to fence its right of way for the protection of an infant trespasser. *Casista* v. *Railroad*, 69 N. H. 649. These propositions are admitted by the plaintiff upon the authorities in this state, and from them it follows that a railroad is not in fault for not keeping its right of way clear of obstructions which may render the place dangerous to an infant trespasser. This much appears to be conceded. But it is claimed that "throwing away poisons or explosives is an altogether different case"; that carelessness in the control of explosives and poisons "is a breach of duty to the public and to the individual injured." The claim is understood to stand upon the ground that, though a landowner is not liable for failure to take active measures for the protection of trespassers according to the authorities above cited, he is liable for injuries intentionally or wantonly inflicted. *Davis* v. *Railroad*, 70 N. H. 519, 520; *Leavitt* v. *Shoe Co.*, 69 N. H. 597; *Frost* v. *Railroad*, 64 N. H. 220, 222.

At the close of the opening counsel was asked what the evidence would be to prove the defendants' fault. The ruling granting the nonsuit was, in effect, that the facts stated were insufficient to authorize the inference that the plaintiff's injuries were either intentionally or wantonly inflicted by the defendants. The ruling was correct. The only facts suggested were the finding of the torpedo upon the defendants' right of way beside the track, at a point one fourth of a mile from a crossing or station; that the torpedo was of a kind used only by the railroad; and the inference which could be made from the rules of the road by which the trainmen were required to be supplied with torpedoes and

were directed how to use them as signals. These facts furnish no evidence of intentional or wanton injury. In the absence of evidence, it cannot be inferred from the rules requiring the use of torpedoes by trainmen that such use was unnecessary or improper. "As signal torpedoes are necessary in the operation of trains upon railroads, the possession of them by men of the train crew cannot be regarded as negligence, and it cannot be presumed that they are negligently used; but negligence in such a case, as in all others, must be proved either by testimony directly establishing the fact, or by the proof of facts from which such negligence will reasonably follow and be presumed. The jury cannot be allowed to guess that there was negligence without some proof thereof, either direct or inferential." *Cleveland etc. R. R.* v. *Marsh*, 63 Ohio St. 236,— 52 L. R. A. 142, 147 ; *Gahagan* v. *Railroad*, 70 N. H. 441, 444. No evidence to the contrary being offered, the only inference that can be made from the rules is that the use of torpedoes for signaling by placing them upon the rails, except at stations and crossings, was necessary and proper. Conducting their lawful business in a manner which there was no offer to prove was illegal or improper, the defendants are not liable to one who is injured, not by the defendants' acts, but by his own intermeddling with their machinery upon their own land, where the presence of the person injured was without right. *Carter* v. *Railroad*, 19 S. C. 20,— 45 Am. Rep. 754. The case cited was very near the present in its facts. It was there said, there being "no evidence except the naked facts that the defendant had placed the torpedo upon its track for a good purpose, and that the deceased, by intermeddling with it for a bad purpose, had brought upon himself the terrible calamity which resulted from its explosion," that "there was a total want of testimony as to the defendant's negligence, the gist of the action, and therefore the nonsuit should have been granted." In the present case the torpedo was found, not on the rail, but beside it. As to the cause of its being in the latter position, we are left entirely to speculation. In the absence of evidence, the jury cannot conjecture or guess that the presence of the torpedo beside, instead of upon, the rail was due to negligence. Much less could they be permitted to infer that it was wantonly or intentionally left where it was found. But the fact is of no consequence, because the plaintiff was not injured by coming in contact with it in walking along, but because he picked it up and struck it with a stone — a result equally as probable if the torpedo were found upon the rail. As the defendants owed no duty to warn or protect trespassers, the fact that the plaintiff was an infant does not create a duty where none exists. *Buch* v. *Company*, 69 N. H. 257, 261.

The allegation in the first part of the opening statement (which apparently is the declaration in the writ), that the plaintiff when injured was traveling upon the premises of the railroad, as he had a right to do, would authorize the introduction of evidence upon which, if it existed, the plaintiff might have a right to go to the jury; but it is understood from the subsequent statements and the argument that no right is claimed except what would result from the alleged fact that no objection was made to the passage of persons along the track between the Messer-street crossing and the station. This claim has not been urged, but it appears to be conceded that the plaintiff was in fact a trespasser, and the case has been argued by the plaintiff only upon that ground. Invitation by the landowner to go upon his premises cannot be inferred from the fact that persons go there without objection from him. *Clark* v. *Manchester*, 62 N. H. 577, 579; Cool. Torts 606.

*Harriman* v. *Railway*, 45 Ohio St. 11, has been cited. In that case there was evidence that the torpedoes were placed where found wantonly, and not for any necessary or useful purpose. In the absence of evidence of this character, it is not advisable to discuss the doctrine of this case, which on other points embraced in the decision is in conflict with the law of this state.

The action of the plaintiff, though only nine years of age, in placing the torpedo upon the rail and striking it with a stone, might be thought to indicate he had some knowledge of its properties. Doubtless he did not know of the danger from an explosion so made. His injury is to be ascribed, upon the facts stated, to accident or misfortune attributable to his childish ignorance and inexperience, and not to any actionable fault of the defendants. 1 Thomp. Neg., *s.* 1051.

*Exception overruled.*

All concurred.