Coös,
Dec. 4, 1906.

HOBBS, *Adm'r,* *v.* GEORGE W. BLANCHARD & SONS CO.

It is the duty of the owner of premises to so conduct his business as not to actively render unreasonably dangerous the situation of trespassers or bare licensees whose presence is known to him.

Evidence that a servant in charge of dynamite placed sticks of the explosive in an exposed situation, where strangers unacquainted with its properties and unaware of its presence were liable to walk, may warrant a finding that the master's business was conducted in an unnecessarily dangerous manner.

A trespasser who is justifiably ignorant of a dangerous situation caused by the landowner's active intervention is not guilty of contributory negligence for not conducting himself as though he knew of the danger.

CASE, for negligence. At the April term, 1906, of the superior court, a nonsuit was ordered upon the defendants' motion by *Wallace,* C. J., subject to exception, at the close of an opening statement in substance as follows:

Tommy Corbin, the deceased, was a bright, active boy nearly fourteen years old. December 26, 1904, he was killed by an explosion of dynamite at Camp 38, on the premises of the defendants in the unincorporated town of Success, near Berlin. The defendant corporation conducted extensive lumbering operations in Success, covering thousands of acres, and in the course of their business saw fit to have entire families living there, many of them with children. There was no highway for horses to the lumber camps, and the company's railroad furnished the only means of access to the premises. It was the practice for friends to visit at the various camps and ride thereto on the company's trains without paying fare. The company knew of this practice and made no objection thereto. About four years before the accident the Corbin family lived on this same property, and their friends visited them without objection. Only a week before Tommy's death his parents walked up the track and took dinner at one of the camps. The superintendent in charge of the lumbering operations, called

the walking boss, was Joe Durant. He had invited the Corbin family, including Tommy, to visit at the camp, and Tommy had spent a night there that very winter. On Christmas day, 1904, Durant dined with the Corbins in Berlin and invited the family to visit at the Blanchard camps. He invited Tommy particularly; and Chivari, boss of Camp 38, said Tommy might sleep in his bed. Tommy went up to Camp 38 on Christmas afternoon and slept with Chivari, who went off in the morning and left the boy abed.

The defendants' business required them to use dynamite, which was stored in a safe place some distance from camp. Lacombe, the employee who handled the dynamite, knew that it was dangerous and ought to be stored where people would not come in contact with it. Lacombe saw Tommy in camp the morning of the accident, and when he started to leave camp Tommy followed him. Lacombe sent the boy back, and then proceeded to the place where the dynamite was stored, took five sticks, used two of them, and threw the other three down beside a tree within fourteen feet of the door of the office in which Tommy was. Tommy went to the blacksmith shop and got a hammer to use in making a sled, and then returned to the office where Lacombe was sitting and asked for nails. At that time he had the hammer and some barrel staves in his hands. Lacombe said he had no nails, and Tommy left the office. Lacombe knew that the dynamite was lying unprotected within fourteen feet of the office, but he took no precautions for Tommy's safety, although he knew the boy was starting out that way with a hammer, looking for nails to make a sled. Four or five minutes later the dynamite exploded, and soon after the boy was found lying dead. There was smoke about the place, and a hole in the ground where the dynamite had been. The dynamite and the hammer had disappeared, with the exception of a small piece of the explosive found near by. Tommy laid nine or ten feet from the place where the dynamite had been left, and about six feet from the office door. His right hand was blown off, his head was injured on one side and the top lifted up, his face was badly disfigured, the front of his body was lacerated and bruised, and his clothing was burned and torn.

The plaintiff offered to prove further that dynamite is inherently dangerous and may explode without any jar or concussion; that it is likely to explode with the slightest jar, shock, or concussion; that there was no eye-witness of the accident; and that, so far as known, the Corbin boy had never seen dynamite.

*Henry F. Hollis*, *Thomas H. Madigan*, *Jr.*, and *Edmund Sullivan*, for the plaintiff.

*Drew, Jordan, Shurtleff & Morris* and *Rich & Marble*, for the defendants. The terms " active misconduct" (*Frost* v. *Railroad*, 64 N. H. 220, 221), " active intervention " (*Shea* v. *Railroad*, 69 N. H. 361, 363; *Mitchell* v. *Railroad*, 68 N. H. 96, 118), " positive wrongful act " (*Cleveland etc. Ry.* v. *Ballentine*, 84 Fed. Rep. 935, 938), " willful or affirmative acts " (*Gibson* v. *Leonard*, 143 Ill. 182), are used to indicate that the acts complained of bring the case within the meaning of the term " wantonly or intentionally inflicted." Active intervention is a necessary element in the series of events which cause the injury, but not every act which may be classed under the head of active intervention after the presence of a trespasser is known will create a liability; as, for instance, dangerous situations created in the regular pursuit of business operations (*Buch* v. *Company*, 69 N. H. 257 ; *Hughes* v. *Railroad*, 71 N. H. 279 ; *Metcalfe* v. *Company*, 147 Mass. 66 ; *Heinlein* v. *Railroad*, 147 Mass. 136 ; *Leonard* v. *Railroad*, 170 Mass. 318), or when the negligence of the plaintiff is the last event in the series which caused the injury, or when it, at the latest point of time, is concurrent with the negligence of the defendant. *Nashua etc. Co.* v. *Railroad*, 62 N. H. 159. The real inquiry in each case is: Was the injury " wantonly or intentionally " inflicted ?

A careful study of the language of the opinions in *Leavitt* v. *Shoe Co.*, 69 N. H. 597, and *Davis* v. *Railroad*, 70 N. H. 519, and of the dissenting opinion in *Brown* v. *Railroad*, 73 N. H. 568, leads us to believe that the words " wantonly " and " intentionally " are used with reference to the same situations, with little or no shade of difference in their meaning; but it will probably serve no useful purpose to split hairs on the nice distinctions applicable to the terms mentioned. Resting the discussion on broader grounds, we believe that the active intervention required to warrant a finding that an injury is wanton and intentional must be such, in case the presence of the trespasser is unknown, as to constitute culpable ignorance; or in case his presence has been discovered, as to constitute willful injury,—for illustration, failure to act after the trespasser's danger from the active misconduct complained of is actually discovered and realized.

Applying these principles to the case under discussion, we call attention first to the fact that Lacombe, when he laid the dynamite down, had not seen the boy since morning. The boy was not there in sight. It cannot be said that such an act, under the circumstances, was done willfully or intentionally, realizing the danger to the boy. The situation was created when the presence of the boy was unknown. It seems to us that this was not " actively bringing force to bear upon the trespasser," as it is necessary to

N. II.]      Hobbs *v.* Company.      119

do to make the landowner liable within the meaning of the language used in the article of Jeremiah Smith (11 Harv. Law Rev. 349), or in 1 Thomp. Com. Neg., *s.* 948.

It cannot be said that Lacombe's ignorance of the fact that the boy was still upon the premises was *culpable*, because it was not a part of Lacombe's duties to watch the movements of every chance trespasser or person around the camp. In this particular his employment differed from that of an engineer in running his train, who is supposed at all times to be watching the track ahead. A person's ignorance of the presence of a trespasser can be held culpable only when, from the nature of his employment, he owes a duty to others to discover such trespasser. One committing a wrong cannot in his own right demand that a watch be set to follow his movements, or a guide be furnished for his safe conduct.

It is not sufficient to indicate an *intentional* injury that Lacombe had reasonable ground (if such were the fact) to expect that the result was within reasonable probabilities; otherwise, a violation of the duty to exercise ordinary care would of itself be sufficient to make an injury intentional. The danger of inflicting a personal injury upon Corbin by Lacombe must be such as to reasonably permit of a belief that Lacombe either contemplated producing it, or, being conscious of the danger that it would incur, imposed that danger upon Corbin in utter disregard of the consequences, to warrant saying that the circumstances indicate an intentional injury.

We contend that the duty owed to a trespasser after discovery is not the same as the duty owed to one rightfully on the premises, and that the difference finds expression most frequently through the use of the terms " intentional injury " in the one case, and " ordinary care " in the other; and that unless this distinction is to be wiped out, and such cases as *Buch* v. *Company* overruled, the plaintiff cannot recover in the present action.

WALKER, J. The deceased was not, in a legal sense, the guest of the defendant. He was not present in Camp No. 38 upon the defendant's invitation, either express or implied. The fact that it may be chargeable with knowledge that strangers frequently came upon the premises, and were suffered to remain there without actual objection, is not sufficient evidence that the camp boss was authorized by the defendant to charge it with the legal responsibility of a landowner to his guest, by inviting his friends to come to the camp, not for any benefit or advantage to the defendant in its business, but simply for their enjoyment or pleasure. The boy was evidently there to gratify his curiosity and to have " a good time," and not, in the slightest degree, to promote the interests of the defendant. There is, therefore, no reason upon which to base

the inference that the camp boss represented the company, or could legally assume that authority, when he invited the boy to visit the camp. The deceased was not the defendant's invitee.

Whether the deceased was technically a trespasser or a bare licensee, it was competent for the jury to find upon the facts' disclosed that the defendant knew of his presence in the vicinity of the camp at the time of the accident. Knowing that he was there, as well as that strangers were frequently upon the premises with the passive acquiescence of the defendant, it was bound not to actively render his situation unreasonably dangerous. It owed him some duty with reference to his personal safety. "Reasonable men might . . . find that, having reason to anticipate a human being might be in a position to be seriously injured by the action contemplated, men of ordinary prudence, having regard to their general obligation to so conduct their lawful business as not to injure others, would not set in motion forces which might have that result, without taking some precautions to prevent it. This would be true, whether the persons who might be injured were in legal definition trespassers, licensees, or invitees." *Minot* v. *Railroad*, 73 N. H. 317, 321. Other cases decided upon that general principle are *Mitchell* v. *Railroad*, 68 N. H. 96; *Hughes* v. *Railroad*, 71 N. H. 279; *Myers* v. *Railroad*, 72 N. H. 175; and *Brown* v. *Railroad*, 73 N. H. 568. In the last case it is said (*p.* 573) that "the defendants would be responsible for negligently injuring the deceased through their active intervention, even if she were a trespasser, provided at the time of the accident she was in the exercise of ordinary care, and they knew of her presence in a dangerous situation, or failed to exercise due care to discover her presence in such a situation when circumstances existed which would put a person of average prudence upon inquiry. Her presence upon their premises would then be a mere condition and not a contributing cause."

Whether Lacombe's act of putting the sticks of dynamite on the ground at the foot of the tree was negligence, due to the defendant's "active intervention," is principally a question of fact. Lacombe while in the performance of his work as the custodian of the dynamite represented the defendant,—he was in law the defendant for that purpose with reference to third parties,—and the defendant is bound by the legal consequences of his act in that respect. As tending to prove that there was active intervention by the defendant which resulted in the boy's death, it is inferable from the case that leaving dynamite upon the ground in a logging camp, where strangers are liable to be, who are unacquainted with its use or its explosive properties and who are not notified of its presence where they are liable to walk, is not only

a careless act, indicating a disregard of human life, but an unnecessary and unusual act in the reasonable prosecution of lumbering operations. A finding that the defendant was not carrying on its business " in the usual and ordinary manner " (*Buch* v. *Company*, 69 N. H. 257, 259; *Hughes* v. *Railroad, supra,* 285), but in an unnecessarily dangerous and extraordinary manner, would seem to be supported by the reported facts, and to authorize the conclusion that the ordinarily prudent man, having regard for the safety of others, though trespassers upon his land, would not expose them to such exceptional dangers, created at the time and for no reasonably necessary purpose. A man's dominion over his land is not absolute, but is qualified by the principle of reasonably necessary user (*Horan* v. *Byrnes,* 72 N. H. 93); and while he is not answerable to others for damages caused by using his land in such a way as is reasonable and necessary for the proper prosecution of his legitimate business, no reason is apparent why he should escape liability, when the injury results from his doing upon his land unusual and dangerous acts, which the ordinarily prudent man would not do in the proper prosecution of the same business under the circumstances. This principle is doubtless otherwise expressed when it is said that the landowner is not liable to a trespasser or bare licensee for the careless use of his land, in the absence of his active intervention. See 11 Harv. Law. Rev. 349, 360–366. In this case the defendant's negligence or breach of duty to the deceased consisted in creating upon the land a concealed danger, not justified or required by the business it was ostensibly carrying on, when it knew of the boy's presence and of his probable ignorance that the danger existed. It performed at the time an unnecessary affirmative act which it knew was likely to result in serious harm to the deceased and to others similarly situated. The exigencies of its business do not appear to justify such a dangerous mode of procedure, even as against a trespasser or bare licensee.

The fact that " so far as known the Corbin boy had never seen dynamite " is assumed to mean, that he did not know what it was when he saw it, and, of course, that he would not appreciate its explosive character. There is nothing in the case indicating that the defendant had reason to suppose he was acquainted with dynamite, or that he knew that any of it was on the ground at the foot of the tree. It is not improbable that it was partially concealed in the snow and would not attract the attention of one who was not looking for it. Under such circumstances, no duty rested on the boy with reference to the dynamite. If he did not know of its presence and was in no fault for not knowing it was there, it was not incumbent on him to conduct himself as though he was informed of the danger. His ignorance of the danger and the

explosion may show that he was not guilty of contributory negligence. If, however, he understood the danger of his position and that a slight jar might produce an explosion, it would be necessary for the plaintiff to produce further evidence that he was exercising due care. The duty of care involves some conception of the danger likely to result from its non-observance. The circumstances attending the catastrophe, as related in the plaintiff's opening statement, warrant the inference that the boy was guilty of no negligence contributing to his death, and that the sole cause thereof was due to actionable negligence of the defendant.

*Exception sustained.*

PARSONS, C. J., and CHASE and BINGHAM, JJ., concurred: YOUNG, J., concurred in the result. |