EDWARD MANNING HOBERG, BY HIS NEXT FRIEND, HENRY HOBERG, PLAINTIFF IN ERROR, v. COLLINS, LAVERY & CO., DEFENDANT IN ERROR.

Argued June 28, 1910—Decided November 14, 1910.

1. As against a trespasser, a malicious or intentional injury is actionable, while a merely negligent act will not form the basis of recovery, because the duty to observe reasonable care is not owing to the trespasser.
2. That a defendant might reasonably have anticipated a possible injury to a trespasser plays no part in determining willfulness. There must be some evidence tending to show the maliciousness of the offender, that is, his intention to do an injury, else the jury are without authority to infer it.
3. The rule that denies to a trespasser a duty on the part of others to observe care toward him is not changed by the fact that he is an infant.

---

On error to the Supreme Court.

For the plaintiff in error, *McDermott & Enright.*

For the defendant in error, *William Brinkerhoff (Brinkerhoff & Fielder).*

The opinion of the court was delivered by

VOORHEES, J.   While the plaintiff, a boy of about nine years of age, was playing with a companion in a street of Jersey City, on which there were two street car tracks, one of the defendant's large two-horse trucks passed by empty, en route to the stable.  The wagon, built to carry boxes, and open except for high racks at the sides, was in charge of a driver employed by the defendant.

The two boys ran after the wagon, which was being driven on the southbound car track, and jumped upon it to "steal a ride."

They stood upon the spring or iron rod, running across the rear of the wagon underneath the tail board, and supported themselves by holding fast to the tail board with their hands; their heads and shoulders extending above the top of the tail board.  The plaintiff was looking toward the driver, who was sitting in his seat at the front of the wagon, perhaps twelve or fifteen feet away from the boys.  Shortly after the boys had caught on the wagon, and while the horses were going on a walk, the driver turned around, and seeing them, struck back at them once with his whip without any warning.  It struck the plaintiff on his shoulder, so that he felt the hurt.  The plaintiff, in jumping, or attempting to jump, off, fell from the spring in front of or near to a street car, passing on the northbound track in the opposite direction, which ran over and crushed his foot, necessitating amputation.

The plaintiff said:  "I was scared of the whip and I fell off.  I did not jump.  I couldn't jump, he was too fast with the whip.  I couldn't help falling."

It was in evidence that "the tail of the truck, with Hoberg on it, was just passing the front platform of the car when he jumped.  He jumped right into the car.  He ran right against the car."  Still another witness testified:  "I seen the driver

strike at a boy with a whip, and I seen him jump off the truck and run towards the car and then the car hit him."

At the close of the plaintiff's case, a motion to nonsuit was made and granted, and the judgment entered upon it forms the subject of review.

It is admitted that the plaintiff was a trespasser, but he contends that that fact, under the proofs, does not disentitle him to a recovery, and argues that support for the action is found in *Powell* v. *Erie Railroad Co.*, 41 *Vroom* 290, in the following expression of the learned justice who wrote the opinion in that case, viz.: "Excessive or improper force applied in the effort to eject him would, of course, be actionable." The plaintiff also seeks to distinguish that case from the present, because there the trespasser was intercepted in an attempt to board a moving train, an act made by statute a misdemeanor, as well as negligent; also because here there was an actual assault, but not in the Powell case; there the plaintiff was an able-bodied adult, here a child of nine years.

The plaintiff insists that it was due to him to refrain from willfully injurious acts and from such threats of violence as would, in the necessary attempt to avoid it, result in the plaintiff's losing his presence of mind and self-control.

For the purpose of an examination of this case, it may be considered that the driver of the wagon, being in charge of the defendant's property, in the attempted protection of it, by ousting trespassers from it, was acting within the scope of his employment, and thereby rendered his employer liable for his acts.

The general doctrine so often enunciated, that to a trespasser no duty is owed, save to refrain from a willful and intentional injury, usually arises in cases having to do with acts of trespass upon land, yet there is no reason why the same principles should not obtain with reference to such personal property as may be the subject of a trespass committed upon it. Indeed, it has been indirectly applied to that class of property in *Friedman* v. *Snare & Triest Co.*, 42 *Vroom* 605; the personal property there consisting of iron beams which had been piled in the public highway.

In recent times it has been applied, where persons have wrongfully entered upon railway trains, and in these cases, the consideration of the *status* of a trespasser has frequently arisen, and they furnish examples of many recoveries by trespassers that have been sustained.

These cases are not all in harmony, but it would seem that they all hold to the general principle above stated, varying greatly, however, in its application, and thus are productive of divergent conclusions.

As against a trespasser, a malicious or intentional injury is actionable, while a merely negligent act will not form the basis of recovery, because the duty to observe reasonable care is not owing to the trespasser.

To force a man from a rapidly-moving railway train, it is well known, is to subject him to a hazard almost certain to result in loss of life or severe bodily harm. Such an act, therefore, if the conditions are known, is malicious and wrongful.

To remove one from a railway car at rest, is not an inherently dangerous act, nor one which commonly does, or is likely to, eventuate in harm, so that, if in fact an injury should result, it could be said to be wanton or willful and intentional.

The distinction has been quite fully set forth in *Bolin* v. *Chicago, &c., Railway Co.*, 108 *Wis.* 333, where the court says in part: "It is not sufficient to indicate an intentional injury, that the party causing it, had reasonable ground to expect that such a result was within reasonable probabilities, otherwise a violation of the duty to exercise ordinary care would of itself be sufficient to indicate such injury. The danger of inflicting a personal injury upon a person by the conduct of another must be such as to reasonably permit of a belief that such other either contemplated producing it, or, being conscious of the danger that it would occur, imposed that danger upon such person in utter disregard of the consequences to warrant saying, reasonably, that the circumstances indicate willingness to perpetrate such injury."

The declaration in this case is not strictly for negligence, but for a willful and malicious act, with unnecessary force

and violence, causing sudden fear and panic and mental distraction, thereby recognizing the rule herein referred to.

The testimony of the plaintiff disclosed that he had stolen rides before and that drivers had hit at him with their whips. He knew he was acting wrongfully, and that the drivers would be apt to drive him off if they discovered him, as they had done on previous occasions. He said he was watching the driver to see if he would strike at him and was expecting it; that he was ready to jump just as soon as the driver struck but the driver "was too fast with the whip" and he fell. The horses were going on a walk all the time up to the occurrence of the accident.

If the rule concerning trespassers is to be applied in railroad cases, then, *a fortiori,* should it be applied in the present action. The usual cracking of a whip at a boy "catching a ride" on a slowly-moving wagon is the demonstration complained of, but it is quite clear that such conduct was not sufficient to evince an intention to injure, nor were the circumstances such as to indicate that willingness to harm, which is equivalent to an intent to produce that result.

The wagon was not going at a greater rate of speed than it was when the trespasser, with apparent facility, boarded it; the watchfulness of the plaintiff was caused by the avowed apprehension and expectation of receiving the lash. The readiness to jump off was preparation for such necessity, and, as common knowledge indicates, the occurrence was one ordinarily met with among drivers.

It would be going too far to say that a man of ordinary intelligence would expect, under such circumstances, an injurious result, or that there was any evidence of willfulness to be submitted to a jury.

That a defendant might reasonably have anticipated a possible injury to a trespasser plays no part in determining willfulness. There must be some evidence tending to show the maliciousness of the offender—that is, his intention to do an injury, else the jury are without authority to infer it.

Nor was there evidence to sustain a conclusion that the plaintiff, by reason of the defendant's act of whipping, lost

his self-control. He did not claim it in the testimony. The most that he did claim was, that the driver was "too fast." The whip struck the plaintiff on the shoulder, it did not even extend to his back. There was no evidence of excessive force or show of force. It is not perceived how otherwise the driver could have insisted upon the immediate cessation of the trespass, which, undoubtedly, he had a right to do, without abandoning his team in the public street.

Perhaps the consciousness of wrong-doing played an important part with the plaintiff in causing his excitement. The fear of the wrong-doer is thus alluded to in *Planz* v. *Boston and A. R. R.,* 157 *Mass.* 377:

"The order to get off was addressed to him as a wrong-doer, and the fact that he was such would be likely to give force to the order and help to cause the injury. * * * It is fairly to be inferred that his consciousness of his fault and his fear of punishment * * * operated with the order and induced him to take the risk of jumping."

The direction of a verdict in that case was sustained. In *Mugford* v. *Boston and M. R. R.,* 173 *Mass.* 10, it appeared that the plaintiff was eleven and a half years old, and was stealing a ride on a freight car. He was on the side of the car with his feet in the truss bar and both hands in the handle of the door. The train was moving slowly. A brakeman on top of the car saw the boy, came towards him, raised his hand and said, "Get off." The boy looked to see where he was jumping and jumped off, landing on a pile of cinders, as he seemed to have intended to, and slipped under the car, which cut off both his legs. The court below directed a verdict for the defendant. Mr. Justice Holmes, in sustaining the direction, said: "This is not the case of a person being driven by threats of personal violence to jump off a car going at such a high rate of speed *as to make it* unreasonably dangerous *immediately* to insist upon the right to have the trespass ended. See *Lovett* v. *Railroad Company,* 9 *Allen* 557; *Railroad Company* v. *Kelly,* 36 *Kan.* 655. The car was going slowly. The command given by the brakeman was no other than the command of the law and a command to do what the plaintiff by

his own testimony intended to do a little later when at least it would have been no safer so far as the speed of the train was concerned. It frightened the plaintiff to the point of obedience, but not to the point of automatic action or loss of judgment or self-control, as seems to have been the case in *Ansteth* v. *Railroad,* 145 *N. Y.* 210."

It is not shown by the evidence that the plaintiff was frightened to the point of automatic action and thus lost self-control, much less is there any indication that the driver's action was likely to produce that result. The use of the whip was notice that the trespass would not be tolerated. We think the case of *Powell* v. *Erie Railroad Co., supra,* is controlling in this particular.

Nor can the infancy of the plaintiff lead to a different result. The rule that denies to a trespasser a duty on the part of others to observe care toward him is not changed by the fact that he is an infant. This principle was applied in the so-called Turntable cases. *Turess* v. *N. Y., S. & W. R. R.,* 32 *Vroom* 314, and *Delaware, Lackawanna and Western Railroad* v. *Reich, Id.* 635, and also in *Friedman* v. *Snare & Triest Co., supra.* It is also held in Pennsylvania and Massachusetts, *Gillespie* v. *McGowan,* 100 *Pa. St.* 144; *Baltimore and Ohio Railroad* v. *Schwindling,* 101 *Id.* 258; *Rodgers* v. *Lees,* 140 *Id.* 475; *Morrissey* v. *Railroad,* 126 *Mass.* 377.

The plaintiff having failed to adduce evidence from which a jury might legally infer a willful and intentional injury or an exhibition of force calculated to or which in fact did result in the loss of self-control of the plaintiff, the judgment of nonsuit will be affirmed.

*For affirmance*—THE CHANCELLOR, GARRISON, TRENCHARD, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, CONGDON, JJ. 9.

*For reversal*—THE CHIEF JUSTICE, PARKER, VROOM, DILL, JJ. 4.