FREDERICK STARK, BY HIS NEXT FRIEND, HERMAN W. STARK, *Plaintiff in Error*, v. J. G. HOLTZCLAW, RECEIVER, PENSACOLA ELECTRIC COMPANY, A CORPORATION, AND THE ESCAMBIA COUNTY ELECTRIC LIGHT & POWER COMPANY, A CORPORATION, *Defendants in Error*.

En Banc.

Opinion Filed July 25, 1925.

WHITFIELD, J.:

1. One is held responsible for all the consequences of his act which are natural and probable, and ought to have been foreseen by a reasonably prudent man.

2. Even where the highest degree of care is demanded, still the one from whom it is due is bound to guard only against those occurrences which can reasonably be anticipated by the utmost foresight.

3. An infant who enters upon premises, having no legal right to do so, either by permission, invitation, or license, or relation to the premises or its owner, is as essentially a trespasser as an adult; but if, to gratify a childish curiosity, or in obedience to a childish propensity, excited by the character of the structure or other conditions, he goes thereon, and is injured by the failure of the owner to properly guard or cover the dangerous conditions which he has created, the owner is liable for such injuries, *provided* the facts are such as to impose the duty of anticipation or prevision; that is, whether, under all of the circumstances, he should have contemplated that children would be attracted or allured to go upon his premises, and sustain injury.

4. Electricity is an invisible force, highly dangerous to life and property, and those who make, sell, distribute and use it are bound to use care in proportion to the danger involved.

5. Electric companies or persons engaged in transmitting electrical current for use are not insurers of the safety of children or adults, and are not held to a degree of care, prudence and foresight beyond which prudent and careful persons have to exercise in such circumstances.

6. Allegations that the defendant electric railway company did carelessly and negligently place electric wires of high and dangerous voltage and defective and worn insulation, between the limbs and through the branches and foliage of a Magnolia tree, of great height and numerous limbs and low hanging branches, on defendant's right of way directly across the track from defendant's depot or station and unfenced; that at the time and for many years there had been and was located a public primary school adjacent to said depot or station house and abutting the right of way boundary of defendant's electric railway which school house was in close proximity to said tree on the defendant's right of way and in plain view of the children in attendance at said school; that the school was in daily session attended by children of immature age and discretion; that the Magnolia tree bore flowers in the Spring of the year that would be attractive to children of immature age, all of which should have been known to the defendant; that plaintiff, a boy 8 years of age, a pupil attending said school, being attracted and lured thereto climbed the tree to gather the flowers therein, and in doing so came in contact with and was injured by defendant's electric wires carrying high and dangerous current of electricity and passing through and among the branches and foliage of the tree, taken with other appropriate allegations, state a cause of action for compensatory damages for injuries sustained as a proximate result of the negligence alleged.

BROWN, J.:

7. Under common law principles, one may not, even upon his own premises, maintain a dangerous and unprotected agency, naturally attractive to, and from which injury may reasonably be expected to result to, very immature children, even though they be licensees or trespassers, where their presence on the premises and exposure to the danger may be reasonably an-

ticipated, and the children are too young to realize and appreciate the danger.

A Writ of Error to the Circuit Court for Escambia County; A. G. Campbell, Judge.

Reversed.

*George Earl Hoffman* and *Fred Cubberly,* for Plaintiff in Error;

*Carter & Yonge* and *Peter O. Knight,* for Defendants in Error.

WHITFIELD, J.—In an amended declaration filed by the plaintiff in error it is alleged that electric companies operated lines of electric railway, and that the "defendants in the operation of its said property suffered and permitted to remain upon its said right of way, directly at and near a station on said Bay Shore Line, known as Patterson Station, a Magnolia Tree, of great height and numerous limbs and low-hanging branches; which said tree was on the right of way of said defendants, directly across the track from said depot or station, and unfenced, and the said defendants in the maintenance and operation of its said electric line, and in the maintenance and operation of its said system of poles and electric wires, carelessly and negligently did string from one pole to another at said point and place electric wires of high and dangerous voltage and defective and worn insulation between the limbs and through the branches and foliage of said Magnolia Tree, so situated on the right of way of said electrified railway of defendants; that at the times aforesaid, and for many years, there has been and was located a public primary school of the County of Escambia, Florida, adjacent to said depot or station house

known as Patterson Station and abutting the right of way boundary of defendants, said electric railway, which said public school house was in close proximity to the said Magnolia Tree on the right of way of defendants' said electric railway and in plain view of the children at all times in attendance at said public school; that at said time the said public school was in daily session and then and there was a place frequented by school and other children of immature age and discretion; that the defendants knew, or by the exercise of due care and caution should have known, that the said Magnolia Tree in the Spring of the year and at the time hereinbefore alleged would and did bear blossoms and flowers, and would be attractive to children, and that children of immature age, discretion and experience such as were in attendance upon said public school, would, in following childish instincts, be lured and tempted to climb said Magnolia Tree when bearing blossoms and flowers, as was said tree at the said time. Yet, the defendants well knowing that the said Magnolia Tree as so situated and growing as to be attractive to children, luring and tempting them to climb, carelessly and negligently strung, and suffered and permitted to be strung and pass through and near the limbs, branches and foliage of said Magnolia Tree, uninsulated and defectively insulated wires carrying high and dangerous voltage, and carelessly and negligently failed to take any precaution or exercise any due care and caution to prevent children of tender years and immature discretion from climbing said tree to gather blossoms and flowers; and carelessly and negligently failed to exercise due care and caution to prevent injury to such children as might climb said tree to gather flowers by providing proper safeguards against contact with said electric wires by said children; and carelessly and negligently failed to prune said

tree so as to keep the limbs, branches and foliage of said tree a safe distance from said electric wires of defendant, as by the exercise of due care and caution the defendant should have done; and carelessly and negligently and without due care and caution, for a long time prior to and on May 12th, 1922, the said defendants strung and suffered and permitted to remain, and did use the said electric wires in the conduct of its said business, the said electric wires containing high and dangerous voltages, and did string and did suffer said electric wires to pass through and remain in the branches and foliage of said Magnolia Tree; that on the 12th day of May, A. D. 1922, the plaintiff, a boy of eight years of age, a pupil attending said school, immature and wholly ignorant of the danger lurking in and near the said Magnolia Tree, by reason of the aforesaid carelessness and negligent conduct and omissions of the said defendants while at the said station of the defendants, said depot or station being an unfenced place where school children with the knowledge and consent of the said defendants congregated after alighting from its said cars to attend the sessions of said public school and there to await the arrival of the time for morning report call in attendance at said school, said station or depot being then and there a public place known by the defendants to be frequented by the public and school children attending said public school adjacent to said depot or station, was attracted and lured to climb said tree and climbed the said Magnolia Tree for the purpose of gathering Magnolia flowers growing on the branches and in the foliage of said Magnolia Tree, and in gathering said Magnolia flowers come in contact with the high and dangerous current of electricity of the said defendants passing through and among the branches and foliage of said tree, on the electric wires aforesaid, of said.

defendants, severely shocking plaintiff and rendering him unconscious, and severely burning plaintiff in the right hand and on his leg, causing plaintiff to lose two fingers from his right hand, bruising and disfiguring plaintiff permanently and burning plaintiff's knee and seriously hampering plaintiff in his walk,'' &c.

The defendants demurred on grounds:

''1.   It states no cause of action against the defendants, or either of them.

''2.   The facts set up in the declaration show no negligence of the defendants, or either of them, causing the alleged injury to the said Frederick Stark.

''3.   It does not appear that the defendants, or either of them, owed any obligation to the said Frederick Stark to protect him from the injury alleged in the declaration.

''4.   It does not appear that there was any breach by the defendants, or either of them, of any duty owed to the said Frederick Stark.

''5.   It does not appear that the electric wire described in the declaration was such an instrumentality as to require the defendants, or either of them, to protect the said Frederick Stark from it.

''6.   The declaration is otherwise bad in substance.''

The demurrer was sustained, and the plaintiff, not desiring to further amend, final judgment for the defendants was rendered, and plaintiff took writ of error.

''One is held responsible for all the consequences of his act which are natural and probable, and ought to have been foreseen by a reasonably prudent man.   Thus it has been held that if one unlawfully leaves upon a public street a truck loaded with iron which he ought to have foreseen would very likely be disturbed by heedless children, he is

responsible for an injury which occurs as the result of such disturbance.  Lane v. Atlantic Works, 111 Massachusetts, 136, and see Lynch v. Nurdin, 1 Q. B. 29; Railroad Company v. Stout, 17 Wall. 657; Union Pacific Railway Co. v. McDonald, 152 U. S. 262.''  ''But even where the highest degree of care is demanded, still the one from whom it is due is bound to guard only against those occurrences which can reasonably be anticipated by the utmost foresight.  It has been well said that 'if men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all.  The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anixiety on events that are barely possible.  He will order his precaution by the measure of what appears likely in the known course of things.'  Pollock on Torts, 8th ed. 41.''  Atchison, T. & S. F. R. Co. v. Calhoun, 213 U. S. 1, text 7, 9, 29 Sup. Ct. Rep. 321.

An ''infant who enters upon premises, having no legal right to do so, either by permission, invitation, or license, or relation to the premises or its owner, is as essentially a trespasser as an adult; but if, to gratify a childish curiosity, or in obedience to a childish propensity, excited by the character of the structure or other conditions, he goes thereon, and is injured by the failure of the owner to properly guard or cover the dangerous conditions which he has created, the owner is liable for such injuries, *provided* the facts are such as to impose the duty of anticipation or prevision; that is, whether, under all of the circumstances, he should have contemplated that children would be attracted or allured to go upon his premises, and sustain injury.''  Briscoe v. Henderson Lighting & Power Co., 148 N. C. 396, 62 S. E. Rep. 600, 19 L. R. A. (N. S.) 1116.

Electricity is an invisible force, highly dangerous to life and property, and those who make, sell, distribute and use it are bound to use care in proportion to the danger involved. Jacksonville Electric Co. v. Sloan, 52 Fla. 257, 42 South. Rep. 516.

Persons or corporations engaged in the business of transmitting electricity for use in private houses are held to a high degree of care for the safety of the public and the safety of thoughtless, inexperienced and rash children.

Electric companies or persons engaged in transmitting electrical current into houses for domestic use are not insurers of the safety of children or adults and are not held to a degree of care, prudence and foresight beyond which prudent and careful persons have to exercise in such like circumstances. Key West Electric Co. v. Roberts, 81 Fla. 743, 89 South. Rep. 122.

The declaration alleges that the defendant electric companies in the operation of the railways, permitted to remain unfenced on its right of way, directly at or near a station, a magnolia tree, of great height and numerous limbs and low-hanging branches, carelessly and negligently did string from one pole to another electric wires of high and dangerous voltage and defective and worn insulation, between the limbs and through the branches and foliage of said magnolia tree; that a public primary school of the county is adjacent to said depot and station and abutting defendant's right of way, said school house being in close proximity to the said magnolia tree on defendant's right of way and in plain view at all times of the children in attendance at said public school then in daily session and the place was frequented by school and other children of immature age and discretion; that the defendants knew, or by the exercise of due care and caution should have known ''that the said

magnolia tree in the Spring of the year and at the time here-inbefore alleged would and did bear blossoms and flowers, and would be attractive to children, and that children of immature age, discretion and experience such as were in attendance upon said public school, would, in following childish instincts, be lured and tempted to climb said Magnolia Tree when bearing blossoms and flowers, as was said 'tree at said time,'' and that the defendants carelessly and negligently failed to take precautions to prevent injury to children who might climb the tree, &c. The injured child was eight years of age.

These and other allegations stated a cause of action. See Chickering v. Lincoln County Power Co., 118 Me. 414, 108 Atl. Rep. 460; Wolf v. Ford, 7 Ohio App. 461; Benton v. North Carolina Public-Service Corp., 165 N. C. 354, 81 S. E. Rep. 448; Temple v. McComb City Electric Light & Power Co., 89 Miss. 1, 42 South. Rep. 874; 11 L. R. A. (N. S.) 449, 119 Am. St. Rep. 698, 10 Ann. Cas. 924; Sweeten v. Pacific Power & Light Co., 88 Wash. 679, 153 Pac. Rep. 1054; Mullen v. Wilkes-Barre Gas & Electric Co., 38 Pa. Supr. Ct. 3; Daltry v. Media Electric Light, Heat & Power Co., 208 Pa. 403, 57 Atl. Rep. 833; Lynchburg Tel. Co. v. Booker, 103 Va. 594, 50 S. E. Rep. 148; Mullen v. Wilkes-Barre Gas & Electric Co., 229 Pa. 54, 77 Atl. Rep. 1108; Consolidated Electric Light & Power Co. v. Healy, 65 Kan. 798, 70 Pac. Rep. 884; Nelson v. Branford Lighting & Water Co., 75 Conn. 548, 54 Atl. Rep. 303; Stedwell v. Chicago, 297 Ill. 486, 130 N. E. Rep. 729, 17 A. L. R. 829, and Notes, p. 837; 29 Cyc. 447; Beckwith v. City of Malden, 212 Mo. App. 488, 253 S. W. Rep. 17; Godfrey v. Kansas City Light & Power Co., 299 Mo. 472, 253 S. W. Rep. 233; Davis v. Florida Power Co., 64 Fla. 246, 60 South. Rep. 759; 20 C. J. 353; Godfrey v. Kansas City Light & Power Co., 299 Mo.

472, 253 S. W. Rep. 233; Godfrey v. Kansas City Light & Power Co., 213 Mo. App. 139, 247 S. W. Rep. 451; Znidersich v. Minnesota U. Co., 155 Minn. 293, 193 N. W. Rep. 449; Potera v. City of Brookhaven, 95 Miss. 774, 49 South. Rep. 617; Laurel Light & Ry. Co. v. Jones, — Miss. —, 102 South. Rep. 1; 36 A. L. R. 23. In Parshall v. Lapeer Gas-Elec. Co., 228 Mich. 80, 199 N. W. Rep. 599, the injured person was an adult. See 14 A. L. R. 1032.

In Key West Electric Co. v. Roberts, 81 Fla. 743, 89 South. Rep. 122, 17 A. L. R. 807, the defendant electric company could not reasonably have contemplated that the injured boy would come in contact with the fatal electric current under the circumstances. See 20 Cyc. 351. In Central of Georgia R. Co. v. Robins, 209 Ala. 6, 95 South. Rep. 367, 36 A. L. R. 10, the injured boy was fifteen years of age.

In United Zinc & Chemical Co. v. Britt, 258 U. S. 268, 42 Sup. Ct. Rep. 299, 36 A. L. R. 28, the danger was removed from the traveled way. See also Briscoe v. Henderson Lighting & Power Co., 148 N. C. 396, 62 S. E. Rep. 600; Wilmot v. McPadden, 79 Conn. 367, 65 Atl. Rep. 157; Willis Swartwood's Guardian v. Louisville & N. R. Co., 129 Ky. 247, 111 S. W. Rep. 305, 19 L. R. A. (N. S.) 1112; Heller v. New York, N. H. & H. R. Co., 265 Fed. Rep. 192. McCaffrey v. Concord Electric Co., 80 N. H. 45, 114 Atl. Rep. 395, 17 A. L. R. 813, was controlled somewhat by statute. In Austin v. Public Service Co. of Northern Illinois, 299 Ill. 112, 132 N. E. Rep. 458, contributory negligence was a factor. In New York, N. H. & H. R. Co. v. Fruchter, 260 U. S. 141, 43 Sup. Ct. Rep. 38, the danger was at a place where boys were not expected to go. See L. R. A. (N. S.) 1918E 1039 Notes; Briscoe v. Henderson L. & P. Co., 148 N. C. 396, 62 S. E. Rep. 600, 19 L. R. A. (N. S.) 1116.

In this case the tree was not on a street, but on a right of

way near a railway station and a school house where children played, and the defendants reasonably should have foreseen and contemplated that boys of venturesome dispositions, but of immature discretion and no appreciation of the lurking dangers of live electric wires, would be apt to climb the tree that was so near and accessible to the public and particularly to children who played near by, and so attractive in bloom; and consequently the defendants should have exercised due care by insulation or otherwise to make and keep the wires strung through the branches of the tree, harmless to children of tender years who might climb the tree under circumstances as shown here. Liability in this case is predicated upon the peculiar facts and circumstances alleged in the declaration.

Reversed.

WEST, C. J., AND TERRELL, STRUM AND BROWN, J. J., concur.

ELLIS, J., dissents.

BROWN, J., concurring:

The "attractive nuisance" doctrine is one which should be very carefully and conservatively applied, but the case made by the declaration here involved is one of those cases where, in the writer's opinion, the doctrine is clearly applicable. I would be unwilling to see this court committed to the too broad and generous (perhaps sometimes sympathetic) application of this principle which has been exhibited by some of the decisions which have followed in the wake of the turn-table cases; but to my mind this declaration makes out a case of liability under the well-settled principles of the common law, as will be shown by

a careful reading of the authorities cited in the opinion of Mr. Justice WHITFIELD. If this tree had been located elsewhere on defendant's right of way, the legal effect might well have been different, as danger therefrom might not reasonably have been anticipated. But to run highly dangerous and insufficiently insulated electric wires through a tree of the sort described in the declaration—a tree lending itself to easy climbing and bearing blooms of a kind naturally attractive to children, and calculated to lure them to climb the tree—such tree being located hard by a school house, where very immature children, too young to appreciate the danger, and hence not legally chargeable with either contributory negligence or assumption of risk, were known to be in daily attendance during the school term, and where it is alleged the defendants knew or should have known that such children would be attracted to climb such tree, was to do an act which transformed this naturally attractive and harmless handiwork of nature into a no less attractive, but in fact most highly dangerous, agency, to children of tender years, thus laying the foundation of actionable negligence in behalf of any such child or children as might, in the exercise of such natural childish propensities, climb the tree and become injured by coming into contact with such wire or wires, or, indeed, of any limbs or foliage of the tree which might by moisture or otherwise have become conductors of the escaping dangerous fluid. It would seem that in such a case liability, reduced to its last analysis, rests upon the common law principle that one may not, even upon his own premises, maintain a dangerous agency, naturally attractive to children, from which injury may reasonably be expected to result to very immature children, even though they be licensees or trespassers, where their presence on the premises and exposure to the danger may be reasonably anticipated, and the children are too young to realize and appreciate the danger.

See Foundations of Legal Liability (Street), Vol. 1, pp. 149-161, and cases cited. "Ownership of property may carry with it the right of the owner to use and exclude others from the use of the property (but however exclusive may be the owner's rights, he is subject always to the maxim *'Sic utere tuo ut alienum non laedas.'* Common prudence forbids that one may arrange, even on his own premises, that which he knows, or in the exercise of common judgment and prudence, ought to know, will naturally attract others into unsuspected danger or great bodily harm. It is the apparent probability of danger rather than rights of property that determines the duty and measure of care required of the author of such a contrivance, for ordinarily the duty of avoiding known danger to others may under some circumstances operate to require care for persons who may be at the place of danger without right." Alabama G. S. R. Co. v. Crocker, 131 Ala. 584, 31 South. Rep. 561. The tree in this case in its natural state was not a dangerous contrivance, in fact no contrivance at all, but it was maintained or allowed by defendants to remain upon their right of way, and, by running through it by the defendants of the highly charged and uninsulated or defectively insulated wires, was transformed into a dangerous agency naturally attractive to young children attending the school in close proximity thereto. Hence the fact that the tree was, in its original state, a harmless natural product, and not a contrivance or mechanical device of man's making, is, in the writer's opinion, not material.

ELLIS, J., dissenting.

I realize that in many cases the serviceability of a dissenting opinion is extremely doubtful, if, indeed, it does not make for harmful results which may be expected to flow from differences of opinion on the part of the members

of a court of last resort upon a rule of law by which the responsibilities and liabilities of citizens are to be measured in their relations to one another.

Certainty as to rules of law is much to be desired. Just what rule obtains in a given situation should not be the subject of speculation, particularly on the part of a court of last resort to whom the people look for an exposition of the reason and science of it. The laity, for the most part untrained in the "law and the reason thereof," may be in ignorance of the existence of a rule, or knowing the rule fail to perceive the reason for it. But the people look with confidence to their courts of superior jurisdiction, both original and appellate, for a clear and scientific explanation of both the rule and its application. When such helpful service in the adjustment of private and public relations is not obtainable, when the membership of the court is divided both as to the existence of an alleged rule and its application in a given case an element of uncertainty, even confusion, is injected into the body of the law which makes for dissatisfaction and supports adverse criticism of our system of government in so far as its functions relate to the administration of law. It is not sufficient that a majority of the individual judges constituting the court are agreed; the fact remains that one or more of the members of the court are in doubt if he, or they, do not in fact deny the existence of the rule or its application.

How then may a person not learned in the law be reasonably held to respond in damages for an act, or omission to perform some act, concerning which he did not and could not know he was under legal obligation to avoid doing or perform? It is neither satisfying to the conscience nor the mind to say that one is presumed to know the law about which the court of last resort is itself in doubt to the extent, at least, of part of its membership. Nor is satisfaction attained by superimposing another fiction upon the first

and saying that as the majority of the court's membership thinks so is the rule which the people are presumed to have known.

Some excellent writers, therefore, have urged that dissenting opinions serve no useful purpose and should be eliminated. That a judge should yield to the majority and acquiesce in that which he deems to be not only wrong but which he deems may become a disturbing factor in the relations of persons coming into business contact with each other, and impede, if not seriously retard, the progress of business or economic activities.

I suppose that when a judge prepares a dissenting opinion he does so in the belief that as the law is a science and rests upon sound reasoning the view he expresses in the given case being true to principle will ultimately obtain and sooner or later prevail.

It is with some such feeling that I submit this dissent from the holding in the instant case. I do not hope to influence the judgment of a majority of my brothers upon this court whose ability and sincerity of purpose in quest of truth I hold in the highest esteem because, realizing my own inability, I seriously doubt that I can place the truth so clearly before them and fortify it with such convincing reason as to clear their minds of what I conceive to be the fallacies which have led them to the judgment in this case. If I succeed in merely stating the correct rule and making a correct application of it I shall be content with my labor in the belief that if the views I express are true they will ultimately prevail, notwithstanding the incident of the retrogression afforded by the instant case.

To hold the defendants liable in damages to the plaintiff upon the facts alleged in the declaration we must hold that the defendants owed to the child, who brought the action by his next friend, a duty growing out of the circumstances alleged, which duty the defendants failed to perform, and

that such failure was the proximate cause of the child's injury and damage.

The case rested therefore upon an omission of duty by the defendants.

The circumstances, as gathered from the declaration to which the demurrer was interposed, are as follows:

The defendants were engaged in the business of operating electric railway cars over their lines of railway in Pensacola. One of the lines of railway extended in a westerly direction toward the United States Naval Reservation and was called the Bay Shore Line. The defendants were also engaged in the business of producing, transmitting, using and selling electric current and they used the right of way of the Bay Shore Line upon which to erect the poles supporting the wires through which the electric current was transmitted.

Near a station on the Bay Shore Line, on the defendants' right of way, a magnolia tree of great height, numerous limbs and low-hanging branches grew. It was across the track from the station. Through the branches of the tree the defendants suffered their electric wires to run; the insulation upon such wires was defective and worn.

A public primary school was located adjacent to the station house of the defendants and abutting the right of way boundary. The schoolhouse was in close proximity to the tree which was in plain view of the children in attendance at the school. That on the day the accident occurred the school was in session and was a place frequented by "school and other children of immature age and discretion."

The accident occurred in May, 1922. The magnolia tree was in bloom. The plaintiff, a boy of eight years of age and a pupil in attendance upon the school, while waiting at the station, which was an unfenced place and where children congregated after alighting from the cars to await

the arrival of the time for morning report, was attracted and lured to climb the tree for the purpose of gathering flowers. In gathering the flowers the child was shocked by an electrical current passing through the tree and sustained serious and painful injuries.

The declaration is deficient in its phraseology. It ignores one of the elements of pleading in that several of its allegations of material facts are not directly and positively made but appear by way of recital and inference.

The demurrer reached that defect and might with propriety have been sustained upon that ground, but I pass that point with no further comment upon it.

It might be well here to analyze the allegations of the declaration in a negative way as the basis of the action is an omission by defendants to perform a duty which they owed to the plaintiff.

It does not appear that the tree was upon the same side of the railway track as the station nor upon the same side of the track as the schoolhouse, nor that the land surround-ing the tree as far as the railroad track in one direction was either a playground for children, or a place where they were accustomed to congregate after alighting from the cars and while waiting for the school hour to arrive, nor that children ever played under the tree or upon the tree side of the right of way, or ever climbed the tree for flowers or for any purpose.

Now it is asserted that under these circumstances the defendants owed to the plaintiff the duty to keep the wires passing through the tree thoroughly insulated and to take precautions to prevent the plaintiff from climbing the tree.

This alleged duty rests upon the assumption that the tree, which at the time was in flower, constituted an "attractive nuisance" or an "implied invitation" to the plaintiff to leave the station, cross the railroad track and climb the tree. That the child, therefore, was not a tres-

passer upon the defendants' property at the time he was injured, but a licensee. That, while the tree, under the circumstances, did not amount to an invitation, or attractive nuisance, so far as adults or persons of mature age or better understanding were concerned, it was to a child of eight years of age because of its supposed lack of discretion and experience and the existence of childish, boyish instincts to climb trees and gather flowers.

While it may be a boyish instinct to climb trees and rob birds' nests I am not prepared to say that it is a boyish instinct to climb trees for the purpose of gathering flowers. Boys rather affect a contempt and disdain for such girlish trophies.

But assuming, as the majority opinion does, the existence of such boyish instinct and conceding the further assumption that the flowers constituted the attraction and not the tree, because the allegation is that children "would, in following childish instincts would be lured and tempted to climb said Magnolia Tree when bearing blossoms and flowers, as was said tree at the said time," the question is under what rule or principle of law, if any exists, did the defendants owe to the plaintiff the duty to take reasonable precautions to prevent injury to him from the electrical current which the defendants were lawfully producing and transmitting through its wires?

It is admitted in the majority opinion that in cases where the hightest degree of care is demanded to prevent injuries to others "still the one from whom it is due is bound to guard only against those occurrences which can reasonably be anticipated by the utmost foresight." That "the reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of

things." In support of this doctrine the opinion cites Pollock on Torts, 8th ed., 41, and Atchison, T. & S. F. R. Co. v. Calhoun, 213, U. S. 1, text 7, 9, 29 Sup. Ct. Rep 321.

These authorities discuss the doctrine of "natural and probable consequence" and Sir Frederick Pollock, in the work cited, said: "This being the standard it follows that if in a particular case (not being within certain special and more stringent rules) the harm complained of is not such as a reasonable man in the defendant's place should have *foreseen* as *likely* to happen there is no wrong and no liability."

This doctrine is alike applicable to all persons natural or artificial. A corporation or natural person engaged in a business requiring the handling and transmission of dangerous agencies is not within a more stringent rule. In such cases the rule when applicable simply requires a higher degree of efficiency in the precaution which the rule requires to be taken to prevent injury.

Foreseeing a harm which is likely to happen to one from the defendant's agencies is the element which charges the defendant with liability and renders his conduct passively or wilfully negligent according to the degree of efficiency of the precaution taken by him to prevent it. If in such case he takes no precaution to prevent the injury his omission to perform the duty would be in its nature wilful, but if the precaution which he does take fails because of its lack of efficiency he may be liable for his negligence but to a less degree of liability. The element of intention, express or implied, is therefore necessarily involved in this rule.

It does not apply to trespassers until after the defendant becomes aware of the plaintiff's danger. The obligation which the owner of property owes to trespassers and licensees, all persons who are upon the property without right, is the same. That obligation is not to injure them

after becoming aware of their presence. To warrant a recovery for an injury a trespasser must show that it was wantonly inflicted or that the owner being present could have prevented the injury by the exercise of ordinary care after discovering the danger. The rule is applicable to children as well as adults. See 20 R. C. L. 57-60; Pomponio v. New York, N. H. & H. T. Co., 66 Conn. 528, 34 Atl. Rep. 491, 50 A. S. R. 124, 32 L. R. A. 530; Gibson v. Leonard, 143 Ill. 182, 32 N. E. Rep. 182, 36 A. S. R. 376, 17 L. R. A. 588; Morrissey v. Eastern Railroad Co., 126 Mass. 377, 30 Am. Rep. 686; Barney v. Hannibal & St. J. R. Co., 126 Mo. 372, 28 S. W. Rep. 1069, 26 L. R. A. 847; Hobbs v. George W. Blanchard & Sons Co., 74 N. H. 116, 65 Atl. Rep. 382, 124 A. S. R. 944; Hoberg v. Collins, Lavery & Co., 80 N. J. L. 425, 78 Atl. Rep. 166, 31 L. R. A. (N. S.) 1064; Riddel v. West Jersey & S. R. Co., 177 Fed. 374, 101 C. C. A. 428, 21 Ann. Cas. 746, 28 L. R. A. (N. S.) 98; Gay v. Essex Electric St. Ry. Co., 159 Mass. 238, 34 N. E. Rep. 186, 38 A. S. R. 415, 21 L. R. A. 448; Highland Ave. & B. R. Co. v. Robbins, 124 Ala. 113, 27 South. Rep. 422, 82 A. S. R. 153; St. Louis, I. M. & S. R. Co. v. Waggoner, 112 Ark. 593, 166 S. W. Rep. 948, 52 L. R. A. (N. S.) 181; Mergenthaler v. Kirby, 79 Md. 182, 28 Atl. Rep. 1065, 47 A. S. R. 371, and other cases cited. Key West Electric Co. v. Roberts, 81 Fla. 743, 89 South. Rep. 122, 17 A. L. R. 807.

The Florida case expressly holds that a child may be a trespasser. The rule of law upon which the decision in that case rested was the rule quoted above. The judgment was based upon such decision. So the rule that a child cannot be a trespasser does not obtain in this State.

Now, if in the Key West case the child had been injured while climbing a tree upon the highway through which the defendant's electric wires may have run a different case would have been presented and a different rule applied.

Now in some jurisdictions an exception to the rule is made in the case of children of tender age, lack of discretion and experience. Such exception, called by some the humane rule, has been carried to its extreme limit in the turntable cases, but it rests upon logic. The reason for it is scientific, not sentimental. But the exception has been applied only in the case of children trespassers on real property in such cases where defective and dangerous machinery, dangerous instrumentalities, fires, chimneys, flues, furnaces and engines and turntables were the instruments producing the injury. In the case of ponds, reservoirs or streams it is said that the weight of authority is that they are not to be classed with turntables and that the owner of the premises on which the pond or reservoir is situated is under no obligation to keep the premises guarded against the trespasses of children. See Peters v. Bowman, 115 Cal. 345, 47 Pac. Rep. 113-598; City of Pekin v. McMahon, 154 Ill. 141, 39 N. E. Rep. 484; Stendal v. Boyd, 73 Minn. 53, 75 N. W. Rep. 735; Moran v. Pullman Palace Car Co., 134 Mo. 641, 36 S. W. Rep. 659; Richards v. Connell, 45 Neb. 467, 63 N. W. Rep. 915; Gillespie v. McGowan, 100 Pa. St. 144; Dobbins v. Missouri, K. & T. Ry. Co., 91 Texas 60, 41 S. W. Rep. 62; Klix v. Nieman, 68 Wis. 271, 32 N. W. Rep. 223.

Now the doctrine applied in the turntable and like cases is called the "attractive nuisances" or "implied invitation" doctrine. What legal theory underlies or permeates the doctrine is a matter of much dispute. It is said that conservation of child life and safety as to artificial perils is of such importance that ordinary care may well hold every one responsible for creating or maintaining a condition involving any such with *reasonable* ground for apprehending that children of tender years may *probably* be *allured* thereto. See 20 R. C. L. 80.

The case of Lynch v. Nurdin, 1 Q. B. 29, 4 Perry & D. 672, decided in 1841, is the pioneer case on the attractive nuisance doctrine. It is not a common law doctrine. Not until the case of Sioux City R. Co. v. Stout, 17 Wall. 657, 21 U. S. (L. Ed.) 745, decided in 1873, has there been any extended discussion of the questions involved in that doctrine. That case established the turntable doctrine. In that case the defendant was held to be liable from the fact that the company's employees knew that boys had played on the premises where the turntable was located. The court said that the question of the defendant's negligence was one for the jury to determine and that the jury were justified in believing that children would *probably* resort to the turntable and the defendant should have anticipated their resort to it from the *fact* that *several* boys were at play there when the accident occurred *and had played there on other occasions* within the observation and to the *knowledge* of *defendant's employees.* (Italics mine.)

Many courts have given the doctrine their approval while others equally able and learned have disapproved it. It is asserted that modern tendencies are toward a restriction rather than an extension of the principle established. 20 R. C. L. 81; Ryan v. Tower, 128 Mich. 463, 87 N. W. Rep. 644; New York, N. H. & H. R. Co. v. Fruchter, 260 U. S. 141, 43 Sup Ct. Rep. 38, 67 L. Ed. 173; Dobbins v. Missouri, K. & T. R. Co., 91 Tex. 60, 41 S. W. Rep. 62, 38 L. R. A. 573; Ritz v. City of Wheeling, 45 W. Va. 262, 31 S. E. Rep. 993; Delaware L. & W. R. Co. v. Reich, 61 N. J. L. 635, 40 Atl. Rep. 682; Frost v. Eastern R. R. Co., 64 N. H. 220, 9 Atl. Rep. 790; Walker's Adm'r v. Potomac, F. & P. R. Co., 105 Va. 226, 53 S. E. Rep. 113; Turess v. New York, S. & W. R. Co., 61 N. J. L. 314, 40 Atl. Rep. 614; Conrad v. Baltimore & O. R. Co., 64 W. Va. 176, 61 S. E. Rep. 44; Thompson v. Baltimore &. O. R.

Co., 218 Pa. 444, 67 Atl. Rep. 768; Gillespie v. McGowan, *supra.*

As said by able counsel for the plaintiff in error in this case, the attractive nuisance doctrine is unsound as indicated by the fact that the courts which follow it cannot agree on the principle on which it rests. An examination of the cases cited in the majority opinion will prove this criticism. Some rest the doctrine upon the assumption that a child cannot become a trespasser; some find an analogy in the principle pervading the "spring gun" cases; some upon the application of the maxim *"Sic utere tuo ut alienum non laedas;"* and still others upon an implied invitation to the child to come upon the owner's premises arising from the attractiveness of the thing maintained there.

But a child may be a trespasser. See United Zinc & Chemical Co. v. Britt, 258 U. S. 268, 42 Sup. Ct. Rep. 299, 66 L. Ed. 615; Key West Electric Co. v. Roberts, *supra.*

The "spring gun" and "trap" cases rest upon a deliberate design to injure followed by the accomplishment of the design; while the maxim *"Sic utere tuo ut alienum non laedas"* refers only to acts of the owner the effects of which extend beyond his own property. See Walker's Adm'r. v. Potomac, F. & P. R. Co., *supra.* The implied invitation doctrine, as the learned counsel say, implies that as there must exist a duty before there can be a breach that the child is rightfully on the premises in the absence of an express invitation, therefore an invitation is implied from the acts done by the owner which he did for an entirely different purpose and from which no reasonable person could imply an invitation to a child to come upon the premises and meddle with the instrumentality set up by the owner in the lawful conduct of his business.

The case of Railroad Company v. Stout, *supra,* the first case in this country upon the attractive nuisance doctrine, rests upon the defendant's knowledge that the place where

the turntable was located was frequented by children who played with the instrumentality. From that circumstance, the custom of the children with regard to that particular instrumentality, it could reasonably be implied that the defendant impliedly consented to their playing with and upon it in which case the defendant should make reasonable provision to prevent injury to them. Because, the defendant knowing the dangerous character of the turntable when operated by inexperienced persons, and impliedly consenting to such operation by children of inexperience, should take reasonable precaution to prevent injury to them.

In every case where the doctrine is invoked the owner of the property is charged with this reasonable precaution, not because of his knowledge that the particular instrumentality is a dangerous one but because of another fact, which is, that children *have* gone upon the premises and played upon or about the dangerous machine or instrumentality.

If the instant case bears any analogy at all to those cases in which the defendant has been held liable for damages to children who climb trees on the *public* highway, through which trees the defendant maintained defective wires through which to transmit electrical current, it must be because children have played on the defendant's right of way at or near the magnolia tree, of which the defendant had knowledge. But that circumstance is lacking in this case.

The majority opinion, therefore, does not apply the "attractive nuisances" or "implied invitation doctrine" but creates a new doctrine which is unsupported by any authority cited in the opinion. Indeed, it could not be supported by authority because it is *new*.

The principle applied is that the maintenance of a natural object upon the defendant's property, which object

because of the defendant's legitimate use of it became a dangerous thing to any child who trespassed upon the defendant's land by climbing upon or into such natural object, is liable for damages for injuries which the child might sustain if such object is by nature an attractive thing.   In aid of the application of such principle, which is without precedent and has no basis in any rule of law or social policy, the court must pyramid one assumption upon another in inverse position.   First, it must assume that the tree in flower is *ipso facto* an attraction to children; that a boy's natural inclination is to climb it to obtain the flowers; that a play ground for them being near by is sufficient notice to defendant that they will climb the tree for such purpose and have done so before; all of which is necessary to the end that the defendant may be technically charged with notice of the particular boy's danger when he climbs the tree.

In other words, the majority opinion makes the natural object notice to the defendant of the danger to children trespassers, while all the cases supporting the "attractive nuisances" doctrine make the *fact* of *former trespesses* by children upon the particular premises, which trespasses were known to the defendant, the notice of danger to them which the owner must use reasonable precaution to prevent.

Again, the majority opinion departs from the attractive nuisance doctrine in that it is applied to a natural object most common and usual, while the doctrine in like cases has been applied only to *artificial* instrumentalities which are uncommonly or unusually attractive to children.

It cannot be said that the failure of the defendants to keep the electric wires, which passed through the branches of the tree, safely insulated was such gross negligence upon their part as to make them wilful tort-feasor with respect to a trespasser who had come within its danger, so as to

make the instant case analogous to the "spring gun" or "trap" cases. So it is not controlled by the principle involved in those cases. See Lunsford's Adm'r v. Colonial Coal & Coke Co., 115 Va. 346, 79 S. E. Rep. 348; Heller v. New York, N. H. & H. R. Co., 265 Fed. 192, 17 A. L. R. 823.

It is not within the doctrine of the turntable cases because, as already pointed out, the thing which is alleged to have attracted the child was a tree which at the time of the accident was in bloom; it was not a mechanical contrivance of the defendant, but a natural object and there is no allegation that children ever played upon the premises, under or upon the tree. It is not within the doctrine of those cases holding the defendants liable where the attractive object was upon the public highway where children playing are not trespassers but where they have a right to be and to whom the defendant in such cases owes a higher degree of caution in making the object safe than if it were upon their private premises. Nor is it within the case of Laurel Light & Ry. Co. v. Jones, — Miss. —, 102 South. Rep. 1, in which case the defendant's wires ran through persimmon trees located upon a street in Ellisville along which the street railway ran, the cars of which were being operated by electricity carried in wires supported by poles along the line of railway and upon the public highway.

I have already written longer than I intended and realize that what I have said may not be convincing to my brothers. My thought has been to call attention to what I conceive to be an error which may have a far-reaching effect where the principle announced in this case may be applied to the case of an individual who in the perfectly legitimate use of his own property unintentionally maintains upon his premises a natural object which by its attractive beauty, or even hideous ugliness, may entice some wayward boy or girl upon

the premises to satisfy his or her curiosity or sense of covetousness and be injured by the dangerous character of the object, which may be a poisonous vine, thorn or flower, a rotten limb, cesspool, fire pit, or open reservoir.

It is not difficult to carry the principle applied in this case to the point where its application would be logical but absurd from the viewpoint of our present well-settled views upon the rights of property and our duties to our neighbors.

For the reasons expressed I dissent from the conclusion reached by the majority and maintain that the judgment should be affirmed.