152 So.2d 808 (1963)
Gary Allen CRUTCHFIELD, a minor, by his father and next friend, Guy R. Crutchfield, and Guy R. Crutchfield, individually, Appellants,
v.
Charles W. and Bessie ADAMS, his wife, Appellees.
No. D-472.
District Court of Appeal of Florida. First District.
April 23, 1963.
Rehearing Denied May 20, 1963.
*809 Walter J. Smith, Tallahassee, for appellants.
Charles R. Timmel, Ft. Walton Beach, for appellees.
CARROLL, DONALD K., Chief Judge.
The plaintiffs, father and son, in an action for an attractive nuisance have appealed from an order and judgment entered by the Circuit Court for Okaloosa County, dismissing their amended complaint.
In granting the defendants' motion to dismiss the amended complaint, the court did not state its reasons therefor, but the grounds set forth by the defendants in their said motion are that the amended complaint fails to state a cause of action, and that the said complaint affirmatively shows on its face that the minor plaintiff is guilty of contributory negligence and assumption of risk.
In the first count of their amended complaint the plaintiffs allege that the defendants are the owners of a certain lot and house and were in control of the said premises; that prior to April 19, 1962, the defendant Charles W. Adams installed an electrical water pump and well on the said premises and negligently failed to cover the said motor and the fan belt that operated the pump, both of which were openly exposed; that the defendants' attention had been called to the fact that the said machinery when in operation was extremely dangerous to children in the vicinity, and the plaintiff father had offered to furnish building materials and to help cover the pump, but the said defendant had declined the said plaintiff's offer to enclose the same, stating that he would do it himself.
The fourth paragraph of the first count, containing the crucial allegations regarding the defendants' knowledge, is as follows:
"4. That the defendants knew that the premises on which the said machinery and pump were operating was one on which children had in the past and were likely in the future to both trespass and to visit their premises by invitation to play with the defendants' five-year-old son, and although the defendants knew that the condition was one of which realized an unreasonable risk of serious bodily harm to children and although the defendants knew that the small children in the neighborhood, because of their youth, did not realize the risk involved in intermeddling in the said machinery or in coming within the area made dangerous by it, and although the defendants knew that the maintaining of the condition was slight as compared to the risk to young children involved therein, the said defendants failed to enclose or place a guard over the revolving electric motor and fan belt, which in turn propelled the electric pump."
The plaintiffs then allege that on April 19, 1962, the minor plaintiff, then three years old, was playing on the said premises with the defendants' five-year-old son, and was on the premises at the said son's implied invitation, along with other neighborhood children; that at this time the electric pump was in operation but the minor plaintiff was unaware of the risk involved in coming within the area of the pump and was attracted to and did catch his left hand in the fan belt, which was revolving, seriously and permanently injuring his hand; and that the injury occurred as a result of the defendants' negligence in failing to enclose *810 the said dangerous mechanism and attractive nuisance.
In the second count of the amended complaint the plaintiff father re-avers the allegations of the first count, other than the damages suffered directly by the minor plaintiff, and seeks damages for the medical expenses he has incurred or will incur as a result of the said injuries to his son.
Since we are here considering whether a complaint states a cause of action, it is necessary to apply two basic rules in this endeavor: that all of the allegations within the four corners of the complaint must be considered; and that all well-pleaded allegations must be accepted as true for this purpose.
The attractive nuisance doctrine prevails in Florida and has been recognized and applied in numerous Florida cases as well as cases in other jurisdictions. "By a long line of decisions of the courts, both of this country and England, the doctrine of `Attractive Nuisance' has been recognized and accepted, where children of immature age are lured to go upon dangerous machines or contrivances." May v. Simmons, 104 Fla. 707, 140 So. 780 (1932).
The rule of liability under the attractive nuisance doctrine is clearly expressed in the following statement in Section 339 of the Restatement of the Law of Torts, which was quoted with apparent approval by the Supreme Court of Florida in Cockerham v. R.E. Vaughan, Inc., 82 So.2d 890 (1955):
"`A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if
"`(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and
"`(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and
"`(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and
"`(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein'."
Applying this rule of liability to the allegations of the amended complaint involved on this appeal, we think and hold that those allegations fall squarely within the requirements of the rule of liability under the attractive nuisance doctrine, and thus the amended complaint states a cause of action against the defendants.
The appellate courts of Florida in numerous decisions have recognized and applied the attractive nuisance doctrine. While in many of these cases, the defendants happened to be corporate entities engaged in construction work, in other decisions the defendant was a landowner not so engaged. One of the numerous examples of the latter group is Ansin v. Thurston, 98 So.2d 87 (Fla.App. 1957).
While we here hold that the amended complaint before us sufficiently states a cause of action under the doctrine of attractive nuisance, we also point out that, in our opinion, if the minor plaintiff was an invitee, a cause of action was therein alleged under the law of negligence without any need to invoke the said doctrine. This statement, we think, justifies an inquiry into, and a discussion of, the fundamental rules of landowners' liability for a child's injuries on their premises. The rule to be applied generally hinges on the status of the person injured  whether he is to be classed *811 legally as an invitee, a licensee, or as a trespasser.
If the injured person is an invitee, the following rule laid down by the Supreme Court of Florida in Goldberg v. Straus, 45 45 So.2d 883 (1950), is applicable to guests injured on landowners' property:
"In such circumstances the rule is that the guest must take the premises as he finds them; subject to the exception, however, that the host will be held to liability for injuries caused to his guest by a natural or artificial condition on the premises, where the host has actual knowledge of the condition and realizes that it involves an unreasonable risk to his guest and has reason to believe that the guest will not discover the condition or realize the risk, by the exercise of reasonable care, yet despite such circumstances, permits the guest to enter or remain on the premises, without exercising reasonable care to make the condition reasonably safe, or to warn the guest of the condition and the risk involved therein [citing numerous authorities]."
See also McNulty v. Hurley, 97 So.2d 185 (Fla. 1957); Cochran v. Abercrombie, 118 So.2d 636, 79 A.L.R.2d 986 (Fla.App. 1960); and Lowery v. Rosenberg, 147 So.2d 321 (Fla.App. 1962).
On the other hand, if the injured person is legally classified as a licensee or trespasser, a different rule of liability may be applicable. These distinctions were clearly delineated by the Supreme Court of Florida in McNulty v. Hurley, 97 So.2d 185 (1957), as follows:
"As between an owner or occupant of premises and persons who come thereon the law recognizes, in general, three distinct and separate relationships. Persons occupying such relationships are classified as either invitees, licensees, or as trespassers.
"The duty owed by the owner or occupant of premises to each class of persons is also distinct. The duty owed by the owner or occupant to the trespasser is to refrain from committing a wilful or wanton injury against him with the rule being softened after discovery by the landowner of peril to the trespasser. Byers v. Gunn, Fla. 1955, 81 So.2d 723.
"The duty owed a licensee is to refrain from wanton negligence or wilful misconduct which would injure him, or to refrain from intentionally exposing him to danger. City of Boca Raton v. Mattef, Fla. 1956, 91 So.2d 644. There may be a further duty to the licensee to warn him of a defect or condition known to the owner or occupant to be dangerous when such danger is not open to ordinary observation by the licensee. Goldberg v. Straus, Fla. 1950, 45 So.2d 883; 65 C.J.S. Negligence § 35 g; Prosser, Torts, Sec. 77, p. 450; Restatement, Torts, Sec. 342, Comment d.
"A greater duty is owed to an invitee than to either of the other class of persons above mentioned. The owner or occupant owes an invitee the duty of keeping the premises in a reasonably safe condition, and, as plaintiff contends, also to guard against subjecting such person to dangers of which the owner or occupant is cognizant or might reasonably have foreseen. First Federal Sav. & Loan Ass'n v. Wylie, Fla. 1950, 46 So.2d 396 and Messner v. Webb's City, Inc., Fla. 1952, 62 So.2d 66."
While the landowner's duties to trespassers and licensees are very much alike, the Supreme Court of Florida pointed out the following distinction in Gainesville & Gulf R. Co. v. Peck, 55 Fla. 402, 46 So. 1019 (1908):
"While the rule of liability to trespassers is very much the same as the liability of an owner of premises to licensees, yet it has been said that where a particular individual, or the public, has express or implied license to enter *812 the premises in question, the probability of the presence of persons thereon may be more readily contemplated than in the case of mere trespassers, in the light of which consideration the conduct of the defendant should be viewed. 21 Am. & Eng.Ency.Law (2d Ed.) 476."
Many years ago the courts evidently felt that the rule of liability as to trespassers was too harsh when applied to a trespassing child of tender years, so they developed the attractive nuisance doctrine as an exception to the rule as to trespassers. The courts' reasoning behind this development was thus described by Prosser in his Law of Torts, second edition 1955, on page 438:
"Where the trespasser is a child, one important reason for the general rule of non-liability is lacking. Because of his immaturity and lack of judgment, the child is incapable of understanding and appreciating all of the possible dangers which he may encounter in trespassing, and he cannot be expected to assume the risk and look out for himself. While it is true that his parents or guardians are charged with the duty of looking out for him, it is obviously neither customary nor practicable for them to keep him under observation continually, or follow him wherever he may go. If he is to be protected, the person who may do it with the least inconvenience is the one upon whose land he strays, and the interest in unrestricted freedom to make use of the land may be required, within reasonable limits, to give way to the greater social interest in the safety of the child."
The determination of whether the three-year old plaintiff was an invitee, a licensee, or a trespasser under the allegations of the amended complaint before us is not without difficulty. That complaint alleges that "the premises on which the machinery and pump were operating was one on which children had in the past and were likely in the future to both trespass and to visit their premises by invitation to play with the defendants' five-year old son * * *" and that the minor plaintiff was playing on the said premises with the defendants' son and was on the premises at the said son's implied invitation, along with other neighborhood children. Under these allegations the minor plaintiff had most of the indicia of an invitee. If he occupied that status, the liability of the defendants can be established without invoking the attractive nuisance doctrine. However, in view of the fact that the said plaintiff was on the premises for social purposes, he was at least a licensee. He was clearly not a trespasser. In our view, even if the said plaintiff was a licensee or a trespasser, he has sufficiently alleged a cause of action under the attractive nuisance doctrine.
We have not found a case in Florida involving the same factual situation as that alleged here, but, of course, finding a "red cow" precedent is not essential to the application of a recognized principle or rule. Some cases in Florida, however, involve analogizable situations, as, for instance, in May v. Simmons, 104 Fla. 707, 140 So. 780 (1932), wherein the Supreme Court held that a complaint alleging that an ice manufacturer, using a sawdust conveyor, inherently dangerous and visible to children, left the conveyor belt exposed though the manufacturer knew or should have known that small boys were in the habit of playing thereon, was sufficient to state a cause of action for the child's injury.
The case from other jurisdictions involving facts closest to those alleged in the case at bar, so far as we have found, is Clover Creamery Co. v. Diehl, 183 Ala. 429, 63 So. 196 (1913). In that case the declaration alleged that the defendant maintained on its premises certain machinery (gear or cogs operated by a belt connected with a gasoline engine for the purpose of operating a water pump), which the defendant permitted to be left open and unguarded; although it knew the plaintiff, a three-year-old child, lived upon the premises and was continually playing around the said machinery; *813 that the machinery was of such a character as would attract a child of the plaintiff's age; and that as a proximate result of the defendant's negligence, the plaintiff's arm was caught in the cogs and injured. The Supreme Court of Alabama held that this declaration sufficiently stated a cause of action.
By way of dictum, the Supreme Court of Florida in Johnson v. Wood, 155 Fla. 753, 21 So.2d 353 (1945), involving the attractive nuisance doctrine, said: "A child beginning to toddle will walk deliberately into the fire, off the balcony, or out the door; one two or three years old will put his hand into a live electric fan, on a hot stove or into the machine belt."
We advert now to the other ground set forth by the defendants in their motion to dismiss  that it affirmatively appears on the fact of the amended complaint that the plaintiffs were guilty of contributory negligence and assumption of risk. This ground, in our opinion, is wholly without merit. Not only do the contributory negligence and assumption of risk of the three-year-old plaintiff and the plaintiff father not appear on the face of the amended complaint but are expressly negatived by the allegations therein. By this, however, we do not mean to imply that the defendants in their defenses could not possibly allege additional facts constituting contributory negligence against the plaintiff father in bar of his recovery. In addition, as the Supreme Court of Florida held in Winner v. Sharp, 43 So.2d 634 (1949), as a matter of law a child of three years is incapable of committing contributory negligence.
We hold, therefore, that the Circuit Court erred in dismissing the amended complaint, so the order and judgment appealed from must be, and they are, reversed, and the cause is remanded with directions for further proceedings consistent with the views herein expressed.
Reversed and remanded with directions.
STURGIS, J, concurs.
RAWLS, J., dissents.
RAWLS, Judge (dissenting).
It is elementary that defendant landowner's duty is determined by the status of infant plaintiff. The amended complaint alleged the infant's status was that of either 1. a trespasser, or 2. an implied licensee.[1] The owner or occupant of premises owes no duty to a trespasser except not to wilfully injure him.[2] The attractive nuisance doctrine is an exception to the rule of nonliability for injury to infant trespassers. Unless the circumstances bring them within the attractive nuisance doctrine, the doctrine of nonliability for injuries to trespassers applies to infant trespassers in the same degree that it does to adult trespassers.[3] The duty of a landowner to a licensee is to refrain from wilful and wanton acts of negligence and to give warning of any defects or dangerous conditions which are not subject to ordinary observation. Actions on the part of a landowner which would not be considered a breach of duty toward an adult licensee may be considered wilful and wanton acts of negligence when applied to an infant.[4] Although semantically, there may appear to be a distinction as to the duty of a landowner to: 1. a trespassing infant, or 2. an infant occupying the status of licensee, *814 I am convinced that such is a distinction without a difference.
Appellants contend in their amended complaint and brief that a residential water pump operated by an electrical motor with an unguarded belt constitutes an inherently dangerous instrumentality, and thus the attractive nuisance doctrine is applicable. I do not agree.
The jurisdiction first entertained the attractive nuisance doctrines in factual situations involving those engaged in the business of the transmission of electricity, a commodity that is highly dangerous per se. The doctrine was apparently rejected in Key West Electric Company v. Roberts;[5] however, after distinguishing the facts from those existing in the Key West case, the Supreme Court applied the attractive nuisance doctrine in the famed "Magnolia Blossom" case.[6] There the court noted that electricity is an invisible force highly dangerous to life and property and those transmitting electricity are held to a high degree of care for the safety of the public and rash children. From this embryo the attractive nuisance doctrine has grown into a veritable giant.
May v. Simmons[7] held that a declaration alleging the injury of a minor child while attempting to ride an endless chain or belt being used by the defendant in conveying sawdust from railway cars to the defendant's ice plant stated a cause of action in view of the fact that a material allegation stated that the machinery was an inherently dangerous instrumentality.
In Peters v. City of Tampa[8] it was held that a declaration which alleged that the defendant by placing an artificial construction across a natural stream in an area frequented by children as a playground, which construction rendered the natural sandy banks of same precipitous and subjected same always to iminent danger of caving in, was a sufficient allegation of fact to state a cause of action within the attractive nuisance doctrine.
In Atlantic Peninsular Holding Co. v. Oenbrink[9] a twelve year old boy while playing on the fourth floor of an unfinished building fell through a shaft resulting in his death. In sustaining a verdict for the plaintiffs it was held that such facts were adequate for bringing the case within the attractive nuisance doctrine.
In Cockerham v. R.E. Vaughan[10] a two and one-half year old child fell into a hole dug on the land of another for the purpose of installing a septic tank. The evidence reflected that the hole was left unprotected for several weeks by the contractor with notice or knowledge that small children were attracted thereto. In setting aside a summary judgment rendered for defendant the court held that a question of fact existed for the jury as to whether same constituted an inherently dangerous condition or a dangerous instrumentality in that the construction project was in a residential neighborhood where families and children lived.
In Allen v. William P. McDonald Corporation[11] the Supreme Court in a four-three decision held that the attractive nuisance doctrine applied to an artificial lake or pond with sloping banks of white sand in a settled community and reversed the lower court which had sustained a demurrer to a declaration alleging such a condition.
*815 In Ansin v. Thurston[12] it was held that a floating dock and raft placed in water together with graded white sand banks constituted an attractive nuisance where located in an area used by trespassers as a swimming place and easily accessible to children in the immediate vicinity.
In Johnson v. Wood[13] it was held that a mortar box in which there was a mixture of lime, sand and other ingredients which was unguarded and unprotected and left on the corner of a city street, constituted an attractive nuisance.
In Fouraker v. Mullis[14] it was held that slack lime left in a plaster mixing trough on a construction project constituted an attractive nuisance.
An analysis of the foregoing cases clearly reveals that the doctrine has been applied in this jurisdiction to factual situations which in each instance has involved: 1. an inherently dangerous instrumentality, 2. the premises involved were occupied by a governmental agency or a legal entity engaged in commercial enterprises. In not one single instance in this or any other jurisdiction can I find where the attractive nuisance doctrine (amounting to the duty owed by a landowner to an invitee) has been asserted in a factual situation involving an infant social guest on residential premises.
In Howard v. Atlantic Coast Line Railroad Company[15] Judge Tuttle speaking for the Fifth Circuit Court of Appeals, stated:
"The Supreme Court of Florida, however, in developing the attractive nuisance doctrine of that state, has not circumscribed itself to the application of any single principle, but rather has considered all factors which properly bear on the reasonableness of the property-owner's acts. * * * And, in recent cases, the degree of danger has been deemed a most significant consideration." [Emphasis supplied.]
In Adler v. Copeland[16] a five year old child drowned as a result of falling into a neighbor's swimming pool. The Third District Court of Appeal, in sustaining a directed verdict for defendant landowner, took judicial notice that swimming pools are fairly common in South Florida and they normally present no hidden danger as far as their construction is concerned. In the instant cause, the chancellor in dismissing the amended complaint could well have taken judicial notice (and so can the writer) that the sand hill section of West Florida is dotted with shallow well electrical pumps such as described by the parties herein. It is obvious that such a pump constitutes a less dangerous instrumentality than a swimming pool, and it must be conceded that the utility of a domestic water system in this age of a bath a day rather than every Saturday night as in the "olden days" is greater than that of a swimming pool.
The attractive nuisance doctrine was initially developed by a recognition of social and economic changes. Common sense dictated that exceptions to the limited liability of a landowner to trespassing children be created. Now, common sense necessitates an evaluation as to such exceptions and the application of same to each new factual situation. That the doctrine has gradually eroded this limited liability cannot be disputed. Sustaining the amended complaint under the factual situation in the instant cause, is, in my opinion, tantamount to holding that a landowner is the insurer of infant children. The dangers of extending *816 the doctrine have been pointed out by able jurists. Mr. Justice Brown, in a special concurrence in the "Magnolia Blossom" case[17] stated: "I would be unwilling to see this court committed to the too broad and generous (perhaps sometimes sympathetic) application of this principle which has been exhibited by some of the decisions which have followed in the wake of the turntable cases * * *." In a dissent in the same case, Justice Ellis stated: "It is not difficult to carry the principle applied in this case to the point where its application would be logical but absurd from the viewpoint of our present well-settled views upon the rights of property and our duties to our neighbors." [Emphasis supplied.]
Almost any one of hundreds of mechanical work-saving devices containing pretty lights or moving parts found in a modern residence will attract a child of such indiscreet age.[18] I submit that the majority opinion now places upon a residential property owner the duty to lock up, fence in, remove the keys, and to take any number of possible precautionary measures either upon the advice of his neighbor or upon his own initiative in order to prevent a trespassing or impliedly invited child from injuring himself or herself. Of course, the safe course is for the landowner to install a ten foot steel chain link fence around his property, keep the gates locked and forbid any child to come upon his premises with his own children. My views are as stated in Mail v. M.R. Smith Lumber & Shingle:[19] "[A]t times it is most difficult, if not impossible, for good, loving parents to guard and protect their children against the natural curiosity and proclivities of active, young children themselves. In other words, frequently children meet with unfortunate accidents because of their own immature propensities, and no one, including both landowners and parents, is to be blamed too severely. If the doctrine of attractive nuisance is extended or applied without regard for the proper balancing of legal responsibilities and liability as between parents and landowners  and many landowners are parents  there is the danger that landowners would, in effect, become the insurers of the safety of children while playing upon their premises."
I am of the opinion that the doctrine of attractive nuisance is not applicable to the factual allegations contained in the amended complaint and the said complaint fails to allege that the defendant landowner has breached any duty owed to the infant plaintiff.
Finally, the majority having held that the amended complaint states a cause of action, they then proceed to say: "Not only do the contributory negligence and assumption of risk of the three-year-old plaintiff and the plaintiff father not appear on the face of the amended complaint but are expressly negatived by the allegations therein." [Emphasis supplied.] The primary legal responsibility for the protection of a child of such tender years from accident and injuries rests upon the parents. Here the father alleged that he had the same knowledge of the "dangerous condition" as did the landowner, but nevertheless his three-year-old was a "social guest" on the premises. Such language, in my opinion, does not negate contributory negligence on the part of the father. It is clearly apparent from the allegations contained in plaintiff's amended complaint that the defense of contributory negligence is available to the defendant as against the plaintiff father.
I would affirm the trial judge's action in dismissing the complaint.
NOTES
[1] I can find no authority for the majority opinion's statement that "Under these allegations the minor plaintiff had most of the indicia of an invitee." The duty and liability to an invitee is succinctly stated on p. 289, 23 Fla.Jur., Negligence, § 45: "An invitee is normally considered to be one who enters the premises of another for purposes connected with the business of the owners or occupant of the premises." [Emphasis supplied.]
[2] 23 Fla.Jur., Negligence, § 54.
[3] Johnson v. Wood, 155 Fla. 753, 21 So.2d 353 (1945).
[4] Adler v. Copeland, 105 So.2d 594 (Fla.App.3d, 1958).
[5] Key West Electric Co. v. Roberts, 81 Fla. 743, 89 So. 122, 17 A.L.R. 807 (1921).
[6] Stark v. Holtzclaw, 90 Fla. 207, 105 So. 330, 41 A.L.R. 1323 (1925).
[7] May v. Simmons, 104 Fla. 707, 140 So. 780 (1932).
[8] Peters v. City of Tampa, 115 Fla. 666, 155 So. 854 (1934).
[9] Atlantic Peninsular Holding Co. v. Oenbrink, 133 Fla. 325, 182 So. 812 (1938).
[10] Cockerham v. R.E. Vaughan, 82 So.2d 890 (Fla. 1955).
[11] Allen v. William P. McDonald Corp., 42 So.2d 706 (Fla. 1949).
[12] Ansin v. Thurston, 98 So.2d 87 (Fla. App.3d 1957).
[13] Johnson v. Wood, 155 Fla. 753, 21 So.2d 353 (1945).
[14] Fouraker v. Mullis, 120 So.2d 808 (Fla. App.1st, 1960).
[15] Howard v. Atlantic Coast Line Railroad Co., 231 F.2d 592 (5th Cir.1956).
[16] Adler v. Copeland, 105 So.2d 594, 595 (Fla.App.3d, 1958).
[17] Stark v. Holtzclaw, See Footnote 6.
[18] For instance: stove, washing machine, mixer, toaster, clothes dryer, sewing machine, can opener, blender, iron, T.V. set, radio, lawnmower, garden tractor, automobile, boat and trailer, outboard motor, etc.
[19] Mail v. M.R. Smith Lumber & Shingle, 47 Wash.2d 447, 287 P.2d 877 (1935).