HENDRY, Judge.
Appellants/plaintiffs take this consolidated appeal from a “summary final judgment” entered in favor of appellee/defend-ant Florida Power & Light Company, and from a “order granting summary final judgment” entered in favor of appellee/de-fendant City of Miami, in a negligence action.
Appellant Claboen Norris is an independent contractor in the business of cutting and trimming trees. Mr. Norris was hired by Eddie and Shirley Cohn to trim certain trees on their property. Ordinance No. 8301 of the City of Miami required that a permit be obtained from the City permitting the cutting and removal of their trees. Norris began to cut the trees on the Cohn property without the required permit. Shortly thereafter, an inspector from the City of Miami came by and ordered Norris to stop working. Shirley Cohn was informed by the inspector that a permit was needed to proceed with the work. On August 4, 1976, a permit was applied for and obtained by Shirley Cohn pursuant to the aforementioned ordinance and Norris completed the job.
Some time after Norris had completed the job authorized by the permit, Mr. Cohn employed Norris to cut the branches of a number of trees located on an adjacent City of Miami right of way. While the trunks of the trees were situated on the City’s property, certain branches overhung onto the Cohn property creating a hazard to a guesthouse structure thereon. Various power lines owned and maintained by Florida Power & Light Company, were located on the City of Miami’s right of way. In his deposition, Mr. Cohn testified that he had made repeated demands on both the City and Florida Power & Light to trim the trees prior to the date of the accident, August 11,1976. It was Cohn’s testimony that both appellees repeatedly neglected his demands to obviate the hazardous situation.
Pursuant to Mr. Cohn’s instructions, Norris proceeded onto the City of Miami’s property, climbing over a fence dividing the Cohn property from the right of way. As Norris inspected the trees to be cut, he observed Florida Power & Light’s overhead power lines. While severing one of the overhanging limbs from the tree trunks, Norris sustained an electric shock when one of the branches allegedly came into contact with a power line which Norris claims was camouflaged by foliage and tree growth.
Thereafter, appellant filed his complaint for damages against both Florida Power & Light and the City of Miami. As to the *1040 City, the following allegations of negligence were pled:
“9. At the abovementioned time and place the defendant, CITY OF MIAMI, was negligent in the following particulars:
“a) In creating and permitting to exist a dangerous and hazardous condition on its property, to wit: large trees growing up into the area of the aforesaid electrical power lines with the limbs of such trees overhanging the adjoining private property.
“b) In failing to take any steps whatsoever to correct the said hazardous condition when it knew or should have known through the exercise of reasonable care that such condition constituted an extreme danger of electrical shock to anyone in the vicinity.
“c) In failing to take any steps to correct the said condition after the abutting land owner had made repeated demands upon the defendant to do so prior to August 11, 1976.
“d) In failing to properly and adequately inspect its property to determine the existence of the said dangerous and hazardous condition.”
As to Florida Power & Light, appellant alleged the following:
“1. At the abovementioned time and place the defendant, FLORIDA POWER AND LIGHT COMPANY, INC., was negligent in the following particulars:
“a) In creating and permitting to exist a highly dangerous condition, to wit: electrical power lines running through and in such close proximity to large trees that same constituted a hazard to anyone in the vicinity.
“b) In failing to take any steps whatsoever to correct the said hazardous condition when it knew or should have known through the exercise of reasonable care that such condition constituted an extreme danger of electrical shock to anyone in the vicinity.
“c) In failing to take any steps to correct the said condition after the abutting land owner had made repeated demands upon the defendant to do so prior to August 11, 1976.
“d) In failing to properly and adequately inspect its electrical power lines to determine the existence of the said dangerous condition.”
Appellees answered the complaint by denying negligence and alleged affirmative defenses. After discovery was completed, motions for summary judgment were filed by appellees. Those motions were granted and judgments were entered in favor of appellees giving rise to this consolidated appeal.
After a careful review of the record we are of the opinion that summary final judgment was proper as to the City of Miami. Section 59-2 of the Miami City Code (in force at the time of the accident) provides as follows:
“Sec. 59-2. Permits - Required - To prune, plant or remove from public land. “It shall be unlawful for any person to trim or prune any tree, shrub or plant or to remove any tree, shrub or plant from any dedicated street, alley, highway, public right of way or easement, public land lying between property lines on either side of a public street, highway, alley, public parking strip, public street, sidewalk or divider, public median strip or planting strip or other land or public place owned by the city without first applying for and obtaining a permit from the director of public works or his authorized representative, with the approval of the city manager.”
Neither appellant nor his employers (the Cohns) sought or was issued a permit to cut the trees located on the City of Miami right of way. The record affirmatively demonstrates that appellant realized that a permit was necessary to cut trees on City of Miami property. Further, it appears that appellant was familiar with the procedure of the City in issuing its permit, i. e., first the City would inspect the tree to be trimmed in order to determine whether or not such trimming could be completed without damage to the tree itself and second, if upon *1041 examination, the City’s inspector discovered Florida Power & Light’s powerlines dangerously near the branches to be cut, he would contact the power company to either de-en-ergize the wires or have the power company cut the limbs off the tree. There does appear to be some doubt as to whether or not appellant was cognizant of the fact that the trees were located on City of Miami property; however, the record does reveal that appellant realized that the trees to be cut were on property other than the Cohns’.
Thus, by appellant’s failure to receive permission of the landowner (City of Miami) to enter upon the property and cut the trees (via a permit) and his awareness of the fact that the trees were not located on the Cohn property, appellant was clearly a trespasser as to the City of Miami. See Roberts v. Pacific Gas & Electric Co., 102 Cal.App. 422, 283 P. 353 (3d DCA 1929). As to the precarious status of the trespasser-appellant, the City owed no greater duty than to avoid wilful and wanton conduct toward him and, upon discovery of his presence, to warn him of known dangers not open to ordinary observation. Pedone v. Fontainebleau Corp., 322 So.2d 79 (Fla. 3d DCA 1975). The record, however, is completely devoid of any evidence to the effect that the City of Miami breached its duty to appellant. Therefore, summary final judgment, as a matter of law and fact, was proper as to the City of Miami.
Florida Power & Light Company likewise argues that appellant’s status as a trespasser on the City of Miami right of way precludes him from recovering against the power company in that the record does not demonstrate that Florida Power & Light Company breached any duty it owed to the trespassing appellant by acting in a wilful or wanton manner. It is our view, however, that while appellant occupied the status of a trespasser as to the City of Miami, that status and accompanying duty did not apply to Florida Power & Light Company.
In Florida Power & Light Co. v. Bridgeman, 133 Fla. 195, 182 So. 911 (1938), the Florida Supreme Court, quoting with approval from 20 C.J. 350, opined as follows:
“ ‘The doctrine of nonliability to trespassers or licensees has been applied to relieve defendant of liability where the trespass or license was with respect to the property of a third person and not that of the defendant. But according to the apparent weight of authority that doctrine has no application to such class of cases, because conceding that plaintiff was a trespasser as to the owner, he was not a trespasser as to the defendant, and the defendant may be held liable for negligence in failing to exercise proper care and precaution to prevent injury, not only as to persons who had a right to be at the place where the injury occurred, but also to persons whom defendant should reasonably have anticipated might be present and exposed to danger at that place, as in the case of places to which children or other persons are accustomed to resort although without technical right to be at such places.’ ” Supra, at 182 So. 917.
Acknowledged by the Supreme Court in the Bridgeman decision, and apparently contradictory to it, is the earlier Supreme Court case of Key West Electric Co. v. Roberts, 81 Fla. 743, 89 So. 122 (1921), wherein a deceased minor’s status as a trespasser on the property of a third party precluded the minor’s estate from recovering against an allegedly negligent electric company which maintained power lines on the property. The apparent contradiction is explained, however, by the fact that in Bridgeman, unlike in Roberts, the trespasser could reasonably have been anticipated by the electric company to be on the third person’s property.
The Bridgeman rationale appears to be the majority view. See Annotation, 30 A.L. R.3d 777 (1970), Status Of Injured Adult As Trespasser On Land Not Owned By Electricity Supplier, As Affecting Its Liability For Injuries Inflicted Upon Him By Electric Wires It Maintains Thereon; Prosser, Law of Torts, 4th Ed. § 58 (1971). See also Allen v. Texas and Pacific Railway Company, 430 F.2d 982 (5th Cir. 1970), cert. den. 401 U.S. 910, 91 S.Ct. 872, 27 L.Ed.2d 808 *1042 (1971); Blackwell v. Alabama Power Company, 275 Ala. 123, 152 So.2d 670 (1963); Weber v. Southwestern Bell Telephone Company, 209 Kan. 273, 497 P.2d 118 (1972); Roberts v. Pacific Gas & Electric Co., supra.
Thus, it would appear sub judice, that as long as Florida Power & Light could have reasonably anticipated appellant’s presence on the City of Miami right of way, its duty to appellant-trespasser was as great a duty as must be exercised by an electric company to the general public. This duty has been expressed as a high degree of care for the safety of the public. Florida Power & Light Co. v. Bridgeman, supra. While this high degree of care expressed in Bridgeman does not raise an electric company to the level of an insurer against all possible accidents, Escambia County Electric Light & Power Co. v. Sutherland, 61 Fla. 167, 55 So. 83 (1911), it does demand that an electric company guard against occurrences which can reasonably be anticipated by the utmost foresight.
In Rice v. Florida Power & Light Company, 363 So.2d 834 (Fla. 3d DCA 1978), we affirmed a summary judgment in favor of Florida Power & Light Company in an action wherein the deceased was electrocuted when he flew a model airplane into an unobstructed overhead power line. In that opinion, we did state that had a clear view of the power lines not existed, or had the power company had actual knowledge that individuals were flying model airplanes near its power lines, then any question of the existence of a duty and breach of that duty would be for the resolution of the jury.
Based upon the record before us, resolving all facts and inferences against the moving party, we are of the opinion that genuine issues of material fact exist which preclude our affirmance of the summary final judgment entered in favor of Florida Power & Light Company. Holl v. Talcott, 191 So.2d 40 (Fla.1966); Lescrynski v. Middlebrook, 260 So.2d 215 (Fla. 4th DCA 1972).
Some of the issues raised by appellant, through allegations in his complaint and by testimony through deposition, which require determination by a trier of fact are: (1) whether or not Florida Power & Light Company could have reasonably anticipated appellant’s presence on the City of Miami’s right of way and thus, owed appellant a high degree of care; (2) whether or not, assuming Florida Power & Light owed appellant a high degree of care, the power company breached its duty to appellant by allegedly neglecting to properly inspect its power lines resulting in a latently hazardous situation whereby foliage obstructed from view one of the power lines; and (3) whether or not, assuming a duty and breach thereof, appellant’s injuries were proximately caused by Florida Power & Light’s action and/or inaction. Rist v. Florida Power & Light Co., 254 So.2d 540 (Fla. 1971); Florida Power & Light Co. v. Bridgeman, supra; Simon v. Tampa Electric Company, 202 So.2d 209 (Fla. 2d DCA 1967).
Accordingly, while summary final judgment is affirmed as to the City of Miami, we must reverse the summary final judgment in favor of Florida Power & Light Co. and remand the cause for further proceedings consistent herewith.
Affirmed as to City of Miami; reversed and remanded as to Florida Power & Light Company.